RECEIVED
OCT 2 9 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 06-1469 (LEAD) |
| | 06-2243 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION AND OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL 108 | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Pending before this Court is PHI, Inc.'s ("PHI") Motion to Dismiss Count II of the Unions' Complaint in the "Return to Work Case"[1] [Doc. 85]. The motion is opposed by the Office of Professional Employees International Union ("OPEIU") and its Local Union 108 ("Local 108") (collectively, "the Unions") [Doc. 93] For the following reasons, PHI's motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2000, OPEIU was certified by the National Mediation Board ("NMB") as the collective bargaining representative of the flight deck crewmembers ("pilots") employed by PHI. Shortly after the NMB certification, OPEIU entered into negotiations with PHI in an attempt to reach an initial collective bargaining agreement ("CBA"). As a result of these negotiations, a CBA was confected between PHI and the Unions on July 12, 2001, which was effective June 1, 2001 through May 31, 2004.

On or about February 19, 2004, negotiations between PHI and the Unions began in an effort to reach a successor CBA. After approximately 39 days of direct bargaining and more than 38

---

[1] Civil Action No. 06-2243.

additional bargaining sessions mediated by the NMB, no successor CBA was reached. On July 28, 2006, the NMB issued a letter advising PHI and the Unions that as of 12:01 a.m. EDT on August 28, 2006, the parties would be free to engage in economic self-help.

On August 28, 2006, PHI filed suit in this court, seeking a declaratory judgment and permanent injunctive relief against the Unions under the Railway Labor Act, 45 U.S.C. §151, *et seq.* ("RLA"), on grounds that the Unions violated Section 2, First of the RLA by bargaining in bad faith and failing to exert reasonable efforts to reach an agreement with the Company (the "Bad Faith Bargaining Case"). PHI also seeks to enjoin the Unions from further bargaining in bad faith and require them, henceforth, to bargain in good faith with the intent of reaching an agreement.

On September 20, 2006, the Unions instituted a strike of PHI's pilots. On November 10, 2006, the Unions advised PHI that the pilots were ending the strike and making an unconditional offer to return to work. On November 27, 2006, the Unions filed a complaint for preliminary and permanent injunctive relief, declaratory judgment, damages, and other relief under the Railway Labor Act, 45 U.S.C. §151, *et seq.* and 28 U.S.C. §2201 (the "Return to Work Case"). In the "Return to Work Case," the Unions allege that PHI has ignored the unconditional return to work offer and/or placed illegal conditions on the offer, in violation of the RLA and La. Rev. Stat. §23:822. Specifically, the Unions allege the following:

[ . . ]

> 46. Under La.R.S. §23:822, it is the declared public policy of the State of Louisiana that employees are to have full freedom of association relating to the negotiating of his or her terms and conditions of employment and that employees shall be free from the interference, restraint or coercion of their employers in concerted activities engaged in for the purpose of collective bargaining or other mutual aid or protection.
>
> 47. At all times since November 10, 2006, PHI has willfully breached its obligations under La. R.S. 23:822 by unlawfully conditioning the Unions' unconditional offer to

return to work on a waiver by the pilots of their right to engage in concerted activity for the purpose of collective bargaining or other mutual aid or protection.

48. PHI's conduct violates La. R.S. §23:822 and constitutes irreparable harm to the Unions and the pilots they represent.

49. PHI's illegal conduct has caused and continues to cause irreparable harm to the Unions and the PHI pilots they represent.

50. The Unions and the pilots they represent have no adequate remedy at law for the violations of La. R.S. §23:822 set forth above.

In their paragraph entitled "Requested Relief," the Unions request that this Court:"[e]njoin PHI from violating La. R.S. 23:822 in its process of returning pilots to employment; . . ."[2]

## II. LAW AND ANALYSIS

### A. Procedural Posture

As an initial matter, this Court notes that PHI's motion was filed as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] However, pursuant to the express language of the rule, a Rule 12(b)(6) motion "shall be made before pleading if a further pleading is

---

[2] Doc. 1, Unions' Complaint, pp. 9-11.

[3] Rule 12(b) states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P.12(b).

permitted." In the instant matter, PHI filed its answer to the Unions' return to work suit [Doc. 22] and the instant motion to dismiss [Doc. 25] on December 20, 2006. Because PHI's motion to dismiss was not filed before its responsive pleading, PHI's motion should be treated as one for judgment on the pleadings pursuant to Rule 12(c)[4] of the Federal Rules of Civil Procedure pursuant to the Fifth Circuit's pronouncement in *Jones v. M.L. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999), as follows:

> Because a rule 12(b) motion must be filed before responsive pleadings, the appellees' motion was untimely. Rule 12(c) motions, however, may be filed after the pleadings are closed. Such motions will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted. Thus, the district court did not err when it construed the defendants' motion as one for judgment on the pleadings.

Accordingly, the instant motion is hereby considered, and will be adjudicated as, a motion for judgment on the pleadings pursuant to Rule 12(c).

### B. Rule 12(c) Standard

The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6), that is, the Court accepts the complaint's well-pleaded facts as true and views them in the light most favorable to the plaintiff. The motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint. *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

---

[4] Rule 12(c) states:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c).

### C. The Unions' "Right to Work Law" Claim

PHI seeks dismissal of the Unions' state "right to work law" claim on grounds that La. Rev. Stat. §23:822 is a criminal statute that neither expressly nor impliedly creates any private right of action or private remedy against PHI. Alternatively, PHI argues that even if Section 23:822 could be read to imply a private right of action against PHI, such claim would be preempted by the Railway Labor Act, 45 U.S.C. §§151-188.

Section 23:822 states:

**§822. Freedom of organization and other activities; declaration of policy**

In the interpretation and application of this Chapter, the public policy of this state is declared as follows:

Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

La. Rev. Stat. §23:822.

La. Rev. Stat. 23:824 provides the penalty for a violation of Section 23:822, to wit:

**§824. Coercion of employees regarding membership in labor organizations; penalty**

Any individual, or any officer, agent or employee of any firm, association, or corporation who coerces, requires, demands, or influences any person to enter into any agreement, either written, verbal, or implied, not to join or become or remain a member of any labor organization or association, as a condition of such person securing employment or continuing in the employment of such individual, firm, association or corporation, shall be fined not less than fifty dollars or imprisoned for not less than thirty days.

La. Rev. Stat. §23:824.

The Unions contend that PHI erroneously argues the Unions are seeking relief pursuant to Section 23:824, when, in fact, the Unions seek relief pursuant to Section 23:822. The Unions argue that, while Section 23:824 may be a criminal and/or penal statute, Section 23:822 is not a criminal statute, and Louisiana jurisprudence holds that a party can obtain injunctive relief for a violation of Section 23:822. See, e.g., *Pineville Police Officers' Assoc., et al. v. City of Pineville*, 713 So. 2d 536 (La. App. 3rd Cir. 1998) (permanent injunctive relief issued where court found that mayor engaged in coercive and unlawful tactics directed toward union members).

After review of the briefs filed by the parties and the applicable law, this Court concludes that it need not determine whether the Unions properly seek relief under either Section 23:822 or 23:824, because claims under both of these Louisiana statutes are preempted by federal law.

### D. Preemption under Federal Law

In *San Diego Building Trades Counsel v. Garmon*, 359 U.S. 236 (1959), *Trainmen v. Jacksonville Terminal Company*, 394 U.S. 369 (1969), *Transworld Airlines, Inc. v. Independent Federation of Flight Attendants*, 489 U.S. 426 (1989), and *Kaufman, et al v. Allied Pilot's Ass'n*, 274 F.3d 197 (5th Cir. 2001), *cert. denied*, 2002 U.S. Lexus, 3052 (2002), the courts set forth the principle that a party in a labor dispute may not employ state law to redress conduct that it simultaneously alleges violates the RLA.

In *Garmon*, an employer sued the Union in state court to recover damages from picketing that allegedly violated the National Labor Relations Act. The United States Supreme Court held that this state remedy was preempted by federal law because the state courts must yield to the exclusive jurisdiction of the NLRB, even when the NLRB has declined to take jurisdiction. *Garmon*, 359 U.S.

at 238, 79 S.Ct. 773. The *Garmon* court further stated that preemption is necessary because "the exercise of state power over a particular area of activity threatens interference with the clearly indicated policy of industrial relations. . ." *Id.* at 243. Concerned with "conflict in its broadest sense," the *Garmon* court eschewed a focus on the type of state regulation or claim, and adopted an approach that "looks to the nature of the activities which the states have sought to regulate." *Id.* *Garmon* requires federal preemption of state causes of action "if they attach liability to conduct that is arguably protected . . . or arguably prohibited by federal labor relations law." *Id.* at 245.

*Garmon* recognized two exceptions to preemption. First, some conduct will "touch interests so deeply rooted in local feeling and responsibility that . . . [the Court] could not infer Congress had deprived the states of the power to act." *Id.* at 244. The classic example of this exception, provided by the court in *Garmon* itself, is that of union activities involving violence. *See also Youngdahl v. Rainfare, Inc.*, 355 U.S. 131, 139-40, 78 S.Ct. 206, 2L.Ed. 2d 151 (1957) (upholding state court injunction against violent picketing). The second exception is for matters only of "peripheral concern" to federal labor relations law. *Garmon*, 359 U.S. at 243.

The Fifth Circuit applied the doctrine of *Garmon* preemption in *Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197 (5th Cir. 2001). In *Kaufman*, airline passengers brought a class action in which they asserted state law claims against an airline pilots union, seeking to recover for economic damages caused when the union staged a sick-out in violation of a federal temporary restraining order. Plaintiffs originally asserted both federal and state claims, and the district court dismissed all claims with prejudice except a state claim of tortious interference with contract arising from post-TRO conduct of the Union. The only issue on appeal was whether the state law claim was preempted by federal law.

On appeal, plaintiffs averred that the federal and state legal regimes were not in conflict inasmuch as a violation of a TRO is a violation of federal law, and further argued that if the two regimes were not contradictory, there could be no preemption. *Kaufman*, 274 F.3d at 202. The Fifth Circuit rejected this argument, finding that it could not stand in light of the United States Supreme Court's decision in *Wisconsin Department of Industry, Labor & Human Relations v. Gould, Inc.*, 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986). See *Kaufman*, 274 F.3d at 202. The *Kaufman* court noted that in *Gould*, the Supreme Court reaffirmed the *Garmon* preemption principle as "prevent[ing] states not only from setting forth *standards of conduct* inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." *Id.* (emphasis in original), citing *Gould*, 475 U.S. at 286.

The *Kaufman* court reiterated that "*Garmon* preemption is required when a state cause of action poses 'a serious risk of conflict with national labor policy,'" noting that:

> The [Supreme] Court has directed that we look not to the effect on labor-management relations of allowing a particular claim to proceed, but rather to conflict in the "broadest sense." *Gould* reminds us that adding state remedies or penalties to the mix would be a "conflict" necessitating preemption... *The concern of Garmon is not so much with the righting of labor wrongs, the concern of the labor relations laws themselves, as with the uniformity and singularity of remedy provided by federal law. It is a national labor policy- as this case makes vivid.*

274 F.3d at 202-03 (emphasis added). See also *Garner v. Teamsters*, 346 U.S. 485, 498-499, 74 S.Ct. 161, 170, 98 L.Ed. 228 (1953) ("The conflict lies in remedies . . . . [W]hen two separate remedies are brought to bear on the same activity, a conflict is imminent.").

In the instant case, this Court notes that Section 23:822 and the RLA prohibit the same conduct, that is, coercion of employees regarding membership in labor organizations. Thus, the

Unions' state law claim brought pursuant to Section 23:822 "attach[es] liability to conduct that is arguably protected . . . by federal labor relations law." *Garmon*, 359 U.S. at 244. Thus, there is a danger of conflicting remedies under the state and federal regimes.

This Court is not persuaded by the Union's argument that the *Garmon* exception for conduct that "touch[es] interests so deeply rooted in local feeling and responsibility that . . . [the Court] could not infer Congress had deprived the states of the power to act" is applicable to this claim. *Garmon*, 359 U.S. at 244. Although the Louisiana legislature has expressed that it is the "public policy" of the state of Louisiana that the individual workman shall have "full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor," La. Rev. Stat. §23:822, this Court concludes that the exclusive remedy for violations of such rights must be addressed under federal labor law. Otherwise, there is a potential for conflicting remedies under the different legal schemes.

For the foregoing reasons, this Court concludes that the Unions' state "right to work law" claims pursuant to La. Rev. Stat. §23:822 are preempted by federal law, and PHI's motion to dismiss [Doc. 85] is, therefore, GRANTED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 29 day of October, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE