RECEIVED
NOV 1 6 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 06-1469 (LEAD) |
| | 06-2243 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION AND OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL 108 | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is PHI, Inc.'s ("PHI") Rule 12(b)(1) Motion to Dismiss Various Claims Raised in the "Return to Work Case"[1] for Lack of Subject Matter Jurisdiction [Doc. 88]. In its motion, PHI seeks to dismiss the following sets of claims:

- the claims of seventeen (17) pilots discharged for engaging in competitive employment;

- the claims of eleven (11) pilots whose return to work is delayed pending psychological evaluation; and

- the claims of two (2) pilots whose requests for sick-leave status have been denied,

hereinafter referred to as the "Right to Work Claims."

The motion is opposed by the Office of Professional Employees International Union ("OPEIU") and its Local Union 108 ("Local 108") (collectively, "the Unions") [Doc. 104]. For the following reasons, PHI's motion is DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2000, OPEIU was certified by the National Mediation Board ("NMB") as the

---

[1] Civil Action No. 06-2243.

collective bargaining representative of the flight deck crewmembers ("pilots") employed by PHI. Shortly after the NMB certification, OPEIU entered into negotiations with PHI in an attempt to reach an initial collective bargaining agreement ("CBA"). As a result of these negotiations, a CBA was confected between PHI and the Unions on July 12, 2001, which was effective June 1, 2001 through May 31, 2004.

On or about February 19, 2004, negotiations between PHI and the Unions began in an effort to reach a successor CBA. After approximately 39 days of direct bargaining and more than 38 additional bargaining sessions mediated by the NMB, no successor CBA was reached. On July 28, 2006, the NMB issued a letter advising PHI and the Unions that as of 12:01 a.m. EDT on August 28, 2006, the parties would be free to engage in economic self-help.

On August 28, 2006, PHI filed suit in this court, seeking a declaratory judgment and permanent injunctive relief against the Unions under the Railway Labor Act, 45 U.S.C. §151, *et seq.* ("RLA"), on grounds that the Unions violated Section 2, First of the RLA by bargaining in bad faith and failing to exert reasonable efforts to reach an agreement with the Company (the "Bad Faith Bargaining Case"). PHI also seeks to enjoin the Unions from further bargaining in bad faith and require them, henceforth, to bargain in good faith with the intent of reaching an agreement.

On September 20, 2006, the Unions instituted a strike of PHI's pilots. On November 10, 2006, the Unions advised PHI that the pilots were ending the strike and making an unconditional offer to return to work. On November 27, 2006, the Unions filed a complaint for preliminary and permanent injunctive relief, declaratory judgment, damages, and other relief under the Railway Labor Act, 45 U.S.C. §151, *et seq.* and 28 U.S.C. §2201 (the "Return to Work Case"). In the "Return to Work Case," the Unions acknowledge that the Unions and PHI are "signatories to an existing

collective bargaining agreement dated July 12, 2001, effective June 1, 2001 through May 31, 2004 ("CBA")." [Doc. 1, ¶6]. As a general matter, in the "Return to Work Case," the Unions allege that PHI has ignored the unconditional return to work offer and/or placed illegal conditions on the offer, in violation of the RLA and La. Rev. Stat. §23:822.[2]

## II. LAW AND ANALYSIS

### A. Rule 12(b)(1) Standard

"Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . ." Fed. R. Civ. Proc. 12(b). "Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other motions, the Court should consider the Rule 12(b)(1) jurisdictional challenge before addressing any other challenge on the merits or sufficiency of the complaint." Id., *citing* Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) a complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming, 281 F.3d at 161, *citing* Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting

---

[2] This Court has already ruled that the Unions' state "right to work law" claims pursuant to La. Rev. Stat. §23:822 are preempted by federal law, and, consequently, these claims have been dismissed. [Docs. 139 & 140].

jurisdiction." 281 F.3d at 161. "Accordingly, the plaintiff always bears the burden of proof that jurisdiction does in fact exist." Id., citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Id., citing Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

Furthermore, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, the Fifth Circuit has held that the trial court must assume jurisdiction and proceed to the merits. *Montez v. Dep't of Navy*, 392 F.3d 147, 149-50 (5th Cir. 2004), citing *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981); see also *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir.1985). "In circumstances where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under either Rule 12(b)(6) or Rule 56." *Id.*

The Unions contend the Return to Work claims involve issues of fact that are central to both this Court's subject matter jurisdiction and the merits of the claims themselves, and this Court should, therefore, assume jurisdiction and proceed to the merits of the case. The Court agrees, and for this reason and the reasons that follow, the Court concludes it has subject matter jurisdiction over the claims at issue.

### B.  The Statutory Framework

In their complaint in the Return to Work Case, the Unions allege PHI has ignored the Unions' unconditional return to work offer and/or placed illegal conditions on the offer. In the instant motion

to dismiss, PHI seeks dismissal of three distinct sets of claims in connection with these allegations, as follows:

- the claims of seventeen (17) pilots discharged for engaging in competitive employment;
- the claims of eleven (11) pilots whose return to work is delayed pending psychological evaluation; and
- the claims of two (2) pilots whose requests for sick-leave status have been denied.

PHI contends the foregoing claims constitute minor disputes under the Railway Labor Act ("RLA"), 45 U.S.C. §151-188, and, as such, the claims must be reviewed under either PHI's normal grievance procedures or be presented to the System Board of Adjustment, which resolves minor disputes for air carriers. Accordingly, PHI contends this Court does not have subject matter jurisdiction over these sets of claims. On the other hand, the Unions argue the claims are not minor disputes but are direct statutory violations of the RLA, and this Court therefore has jurisdiction over them. Alternatively, the Unions argue that, even assuming the claims present minor disputes, this Court nevertheless has jurisdiction over them because they present special circumstances that give this Court jurisdiction.

### 1.     "Major" v. "Minor" Disputes

In passing the RLA, Congress intended to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. *See Atchison, Topeka, & Santa Fe R.R. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413-14, 94 L.Ed.2d 563 (1987); 45 U.S.C. §151a. To realize this goal, the RLA established a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes: major and minor disputes. 45 U.S.C.

§151a.[3]

The Supreme Court first articulated the distinction between minor and major disputes in *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723-24, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The distinction was further clarified and developed in *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) ("*Conrail*"). In *Elgin*, the United States Supreme Court stated that "major" disputes concern:

> the formation of collective bargaining agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to the assertion of rights claimed to have vested in the past.

315 U.S. at 723; *See also Brotherhood of Ry. Carmen v. Atchison, T. & S.F. Ry.*, 894 F.2d 1463, 1466-67 (5th Cir.), *cert. denied*, 498 U.S. 846 (1990) ("*Carmen*").

As "major" disputes involve the formation of collective bargaining agreements, they generally govern rates of pay, rules, or working conditions of employees, as a class. *Conrail*, 491 U.S. at 302, 109 S.Ct. 2477, cited in *Continental Airlines, Inc. v. International Broth. of Teamsters*, 391 F.3d 613, 616 (5th Cir. 2004). These disputes arise when it is alleged that a CBA is not in place, or when a party seeks to change the terms of an existing agreement; therefore, "the issue is not whether an existing agreement controls the controversy." *Continental Airlines, Inc.*, 391 F.3d at 617, quoting *Elgin*, 325 U.S. at 723; *Ruby v. TACA International Airlines*, 439 F.2d 1359 (5th Cir. 1971) (not a minor dispute where carrier's interpretation of the agreement would have authorized transfer of pilot base to El Salvador and nullification of the entire collective bargaining agreement).

---

[3] A third category of labor dispute claims – those presenting direct statutory violations of the RLA – is discussed later in this Memorandum Ruling.

"Minor" disputes, on the other hand, are contract grievances. *Elgin*, 325 U.S. at 724.

Pursuant to the Supreme Court's decision in *Conrail*, "minor" disputes:

> contemplate[] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is being made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.

491 U.S. at 303, quoting *Elgin*, 315 U.S. at 723. "[T]he distinguishing feature of a minor dispute is that the 'dispute may be conclusively resolved by interpreting the existing collective bargaining agreement.'" *Conrail*, 491 U.S. at 304. *See also Carmen*, 894 F.2d at 1466-67 (discussing distinctions between major and minor disputes). Ordinarily, controversies involving disciplinary matters are minor disputes within the exclusive jurisdiction of the Adjustment Boards. *Id.*

Minor disputes must be addressed first through the normal grievance procedure of the employer and, failing that, to a local System Board of Adjustment if the carrier is an air carrier. 45 U.S.C. §§153, 184. "The [System] Board . . . has exclusive jurisdiction over minor disputes." *Conrail*, 491 U.S. at 302; *Carmen*, 894 F.2d at 1467.

While the distinction between major and minor disputes sometimes blurs, the Supreme Court in *Conrail* attempted to clarify matters, explaining that:

> Where [one of the parties] asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement. Where, in contrast, [that party's] claims are frivolous or obviously insubstantial, the dispute is major.

491 U.S. at 307. In other words, a litigant must meet a "relatively light burden" in order to establish the existence of a minor dispute and "exclusive arbitral jurisdiction under the RLA." *Id.* at 307.

Although federal courts do not ordinarily exercise jurisdiction over minor disputes, there are

two "special circumstances" in which federal courts may assert jurisdiction over cases that would otherwise involve minor disputes subject to compulsory arbitration under the RLA: (1) when the minor dispute processes would be ineffective and/or unavailable; or (2) when the actions taken by the carrier were taken for the purpose of weakening or destroying a union. *Carmen*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990).

### a. Is there an existing CBA in this case?

In order to determine whether the claims before the Court are major or minor, the Court must first determine whether there is an existing CBA between the parties. In their complaint in the "Return to Work Case," the Unions allege the Unions and PHI are "signatories to an existing collective bargaining agreement dated July 12, 2001, effective June 1, 2001 through May 31, 2004 ("CBA")." [Doc. 1, ¶6]. The Unions go on to refer to this CBA as the "expired CBA" throughout their brief in opposition to the instant motion to dismiss. PHI argues this CBA governs the issues before the Court, noting that elsewhere in their Complaint, the Unions refer to other portions of the CBA in support of other alleged claims. However, in their opposition brief, the Unions specifically state they "do not concede the existence of a collective bargaining agreement. . . .The Unions acknowledge the existence of a set of terms and conditions of employment consisting of certain provisions of the expired CBA not subject to negotiations, changes to the expired CBA tentatively agreed to and not impacted by PHI's unilateral implementations, and PHI's unilateral implementations." [Doc. 104, p. 9, n.3].

Despite the foregoing, the Unions "assume arguendo" its Return to Work claims are minor disputes over which this Court should exercise jurisdiction. Thus, although the parties appear to dispute the issue of whether there is an existing CBA between them, both parties essentially assume,

for these limited purposes only, that there *is* an existing, albeit expired, CBA such that the disputes raised would be deemed, for these purposes only, minor disputes. Therefore, as the parties address their arguments within the assumption, for these limited purposes only, that the disputes at issue could be "minor" disputes for purposes of determining whether this Court will assume, for purposes of this motion only, this Court will assume there is an existing CBA between the parties of a sufficient nature to allow the issues in dispute to be "minor" disputes.[4]

### b.  Are the disputes before the Court major or minor?

Accepting the parties' limited assumption and accepting for these purposes only the existence of an applicable CBA, this Court concludes PHI has carried its burden of establishing the claims present minor disputes within the meaning of the RLA. Indeed, the disputes are essentially contract grievances inasmuch as they pertain to issues regarding whether a PHI pilot may be discharged for engaging in competitive employment, whether pilots may be subject to psychological evaluation, and the conditions under which PHI may deny the sick leave requests of its pilots. Because these disputes may be conclusively resolved by interpreting an existing CBA, they are minor disputes.

### c.  Do either of the "special circumstances" apply in this case to give this Court jurisdiction over these minor disputes?

The burden now shifts to the Unions to show that either of the two "special circumstances" that permit federal courts to exercise jurisdiction over minor disputes exists in this case. The Unions argue both special circumstances exist, that is, the minor dispute processes typically available to the pilots are ineffective and/or unavailable, and PHI's action were taken with the intention of

---

[4] This Court does not make a substantive factual finding at this juncture that there is or is not an existing applicable CBA in this case, as the parties have not fully briefed such issue and this Court cannot, therefore, make such a determination.

weakening or destroying the Unions.

### i. Are the minor dispute processes ineffective and/or unavailable?

In support of its contention that the minor dispute processes are ineffective and/or unavailable with respect to the Return to Work claims, the Unions contend PHI has unilaterally suspended its own grievance procedures and not permitted the Unions to present the claims to the System Board. In support of their argument, the Unions cite the Declaration of Richard Rovinelli, PHI's Chief Administrative Officer and Director of Human Resources, wherein Mr. Rovinelli states the following:

> each of the grievances ... remains pending for resolution before the System Board. However, as Chairman [of the SBA], I have taken the position with the Unions that the Board may not properly advance those grievances toward resolution (either at the Board level or in the following step of final and binding arbitration before a neutral arbitrator) while the Unions are simultaneously pressing these identical claims as alleged violation[s] of the Railway Labor Act in this Court.

[Attachment to Doc. 88, Declaration of Richard Rovinelli, ¶10].

Additionally, the Unions argue that, after PHI filed the instant motion, PHI advised the Unions it will not allow the System Board or an arbitrator to hear the pilots' grievances unless and until: (a) this Court dismisses the Return To Work Claims; *and* (b) all appeal periods with respect to the Unions' Return To Work claims have expired. The Unions argue they attempted to present the Return to Work claims to the System Board at the Board's May 31, 2007 meeting, but PHI refused to allow the Unions to present the grievances or to allow the System Board members to hear the grievances. [Doc. 104, Exh. 2, Declaration of Paul Bohelski, ¶7]. A transcript of the May 31, 2007 SBA hearing shows that Mr. Rovinelli declared:

> And we are going to suspend all of these grievances until such time as that Federal lawsuit has been resolved. Now, yesterday the Company filed a motion to dismiss all

-10-

> 31 or 30, whatever the net grievances are, from the Federal lawsuit. When that motion is granted *and the appeal period has lapsed*, then the Company is willing to resurrect all 30 or 31 of these grievances and schedule them for the next System Board. So that is the Company's position.

[Doc. 104, Exh. A., "Transcript of May 31, 2007 SBA Hearing at p. 7 (emphasis added)]. Mr. Rovinelli later confirmed PHI's view: "They [the grievances] are suspended until such time as that Federal lawsuit is resolved or that motion is granted, the motion to dismiss these minor claims, which we filed, the Company has filed. And when that motion is granted, and we think it will be, *and the appeal period is done*, then we will schedule all of these grievances before the next System Board." *Id.* at p. 17 (emphasis added).

PHI largely ignores these events, arguing, "[t]here is an existing grievance procedure here, and the parties' dispute over these thirty pending cases will be processed by the System Board. . . This case therefore falls well outside that category of cases in which no adequate forum, other than a court, exists to hear the union's claim." [Doc. 88, p. 13, n.5]. PHI makes no mention of the actions and/or declarations of Mr. Rovinelli in suspending PHI's grievance procedures and the System Board's procedures.

PHI has suspended the grievance procedures for the affected pilots and has refused to allow the System Board to review these pilots' grievances, thus, the pilots find themselves within the special circumstance where the minor dispute process is unavailable to them. PHI, unilaterally, chose to suspend the minor dispute process, and to remove the grievance process and operation of the System's Board and its review of any "minor" grievances. Thus, the process is both ineffective and unavailable to pilots who *now* have grievances and disputes as to the CBA.

This Court notes PHI also, argues the existence of a CBA; vehemently argues the disputes

-11-

are "minor" disputes; and argues the disputes are, thus, relegated to the System Board and its review and resolution. Yet, PHI unilaterally, suspended the operation of that Board, and thus, withdrew the forum provided for resolution of such minor disputes, and declared the minor dispute resolution process would be suspended "until such time as that federal lawsuit has been resolved." [Doc. 104, Ex. A, Transcript of 5/31/07 Petroleum Helicopters Pilot System Board of Adjustment at p. 7]. "When that motion is granted *and the appeal period has lapsed, then the Company is willing to resurrect all 30 or 31 of these grievances and schedule them for the next System Board.*" [*Id.*]

The Court notes that, absent an interlocutory appeal of this Court's ruling under 28 U.S.C. §1292(b), or a certification by this Court under Rule 54(b) of the Federal Rules of Civil Procedure, given the history of this case, resolution of the affected pilots' Return to Work lawsuit could take many years, not months. Furthermore, even though an appeal under either Rule 54(b) or Section 1292(b) is theoretically available to the Unions, the Court notes the strong judicial policy disfavoring fragmented, piecemeal appeals. See, e.g., *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1225 (5th Cir. 1990). Thus, if the Court were to dismiss the claims, and the Unions were forced to seek an immediate appeal, it is not likely the procedural vehicle necessary for such an appeal would be available, and even if available the appellate remedy, itself, could take a significant period of time, and the pilots would remain without a remedy for that significant period of time.[5]

---

[5] This Court also is not convinced an immediate appeal of a ruling on the Return to Work claims, whether by virtue of Section 1292(b) or Rule 54(b), would be appropriate at this juncture. With respect to Section 1292(b) specifically, this rule requires the order being appealed involve a "controlling question of law" as to which "there is substantial ground for difference of opinion" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." This Court cannot state at this time that the Return to Work claims present a "controlling question of law" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Thus, if this Court were to grant the instant motion, any appeal of such ruling likely would not occur until after conclusion of the trial of this matter. As such, as noted, in suspending the grievance procedures, PHI has rendered such procedures as a practical matter, ineffective and/or unavailable to the affected pilots.

Thus, this Court concludes the minor dispute processes are ineffective and/or unavailable to the affected pilots in this matter.[6] PHI, through its own actions, has created the "special circumstances" which create an exception to the general rule that would deprive this Court of jurisdiction. For the foregoing reasons, this Court finds it has subject matter jurisdiction over the claims at issue.

### ii. Were PHI's actions taken with the intent to weaken or destroy the Unions, thereby evidencing anti-union animus?

The Unions argue that the second "special circumstance" under which the Court could exercise jurisdiction over the Return to Work claims exists in this case, because PHI's actions were taken with the intent to weaken or destroy the Unions. The Unions argue such actions constitute not only special circumstances under which the Court could exercise jurisdiction over otherwise minor disputes, but also constitute *direct statutory violations of the RLA*, which give this Court a separate and independent basis for jurisdiction.

Separate and apart from the issue of major and minor disputes is the classification of "statutory violations" of the RLA. Although PHI does not adequately address this issue in its motion, the Unions argue PHI's actions constitute statutory violations of the RLA that provide a separate and independent basis for this Court's jurisdiction. *See, e.g., Brotherhood of Railroad Trainmen v. Central of Ga. Railway Co.*, 305 F.2d 605, 608-09 (5th Cir. 1962) (noting that if the facts

---

[6] The Court concludes it is unnecessary, at this juncture, to consider the parties' arguments concerning whether a Union may pursue a claim before the System Board as well as in federal court. Because the Unions present claims argued to constitute direct statutory violations of the RLA as discussed hereinafter, this Court would have jurisdiction over such claims in order to determine *whether* they are in fact true direct violations; if found not to be, and found rather to be "minor" disputes, of a contractual nature, the resolution of those claims would be within the perview of the System Board's review. However, PHI has chosen to suspend the operation of the review process of the System Board review, thus invoking, by its actions, the "special circumstance" discussed and rendering the previous issue moot.

bore out the allegation that the carrier intended to destroy the effectiveness of the union, it would be a violation of the RLA); *Railway Labor Executives' Ass'n v. Boston & Maine Corp.*, 808 F.2d 150, 158 (1st Cir. 1986) ("B & M") ("[w]here the terms of a contract or rights arising therefrom are not at issue, but rather the claims involve statutory obligations imposed by the RLA, discriminatees, even though covered by collective bargaining contracts, have available judicial remedies to enforce their *statutory* rights).[7]

Here, the Unions argue the Return to Work claims sufficiently illustrate anti-union animus and retaliation on the part of PHI and, therefore, this Court has jurisdiction over such claims *as direct statutory violations of the RLA*. The Unions argue the pilots asserting the Return to Work claims have been retaliated against because of their zealous and vocal support of the Unions. In support of this argument, the Unions argue:

- the pilots asserting claims for compelled psychological examinations have filed declarations showing they were strong supporters of Union causes and/or the strike;

- both pilots who were denied sick leave were vocal supporters of the Unions and the strike; and

- PHI has provided no facts to support its allegations that 17 pilots obtained employment with competitors during the strike; if the pilots did not, indeed, work for competitors, their claims should not be dismissed, and if they did obtain other employment, they did so because PHI delayed the return-to-work process, and it was financially necessary for the pilots to work to support their families.

PHI appears to focus its argument on anti-union animus as constituting the second "exceptional circumstance" under which this Court could exercise jurisdiction over the minor disputes, without making a specific reference to the possible existence of direct statutory violations

---

[7] This Court notes the Unions rely most heavily on the *B&M* case in support of its argument that PHI's actions constitute statutory violations of the RLA. This Court notes that *B&M* was decided by the First Circuit Court of Appeals and is, therefore, not binding on this Court. This Court notes the case for illustrative purposes only.

of the RLA. In this regard, PHI argues "[i]solated incidents of alleged union hostility are insufficient. . . . [t]o the contrary, a union must allege a general campaign that strikes at the very foundation of the RLA."[8] PHI argues there is nothing "extraordinary" about terminating employees who work for competitors, requiring medical examinations from certain employees returning from a months-long strike, or denying sick-leave status to two pilots.

After consideration of the arguments and the jurisprudence presented, this Court concludes that if one were to assume the facts as alleged by the Unions, that is, if PHI's actions in failing to return these pilots to work were done *for retaliatory purposes and/or for the purpose of weakening or destroying the Unions*, such actions theoretically, could support claims for direct statutory violations of the RLA; and as such, this Court would have jurisdiction over such claims if only to determine *whether this Court has jurisdiction*. At the very least, the Court concludes the Unions have set forth evidence and argument as to this issue and PHI has not sufficiently countered that evidence and argument with evidence and argument of its own of more than a general nature. Thus, at this juncture, there exist genuine issues of material fact regarding *whether* PHI's actions constitute retaliation and/or anti-union animus.[9] *See, e.g., Brotherhood of Railroad Trainmen*, 305 F.2d at 607-09 (court held if claim that railroad was attempting to undermine union as bargaining representative bore out, such claim would present a violation of the RLA and court would have jurisdiction over

---

[8] In support of this argument, PHI cites two cases decided by the First Circuit Court of Appeal, *National R.R. Passenger Corp. v. International Assoc. of Machinists and Aerospace Workers*, 915 F.2d 45 (1st Cir. 1990), and *Railway Labor Executives' Assoc. v. Boston & Maine Corp.*, 808 F.2d 150 (1st Cir. 1986).

[9] For example, although the Unions have discussed in some detail the declarations of the affected pilots regarding their union activity – which the Unions argue constitute evidence of motive to retaliate against the pilots – PHI has not countered with specific evidence of its own as to the basis for those actions, relying instead on general argument that isolated incidents of anti-union animus are insufficient. Thus, the Court concludes for these limited purposes only, PHI has not countered with sufficient evidence and/or argument to rebut the prima facie claims of retaliation and/or anti-union animus established by the Unions.

it; court noted, "[i]t is thus a situation in which determination of the Court's jurisdiction will likely be simultaneous with the determination of the merits."). (emphasis added)

For these reasons, the Court concludes movants have not carried their burden to establish dismissal of the "Return to Work" claims at this time.

### C. The Unions' Request That the Court Order PHI to Immediately Resume the System Board Process

Finally, this Court notes the Unions' request *in its response brief* to PHI's motion to dismiss that the Court order PHI to immediately resume the System Board process. For the following reasons, this request is DENIED.

Here, in requesting the Court order PHI resume the grievance procedures, the Unions are essentially seeking injunctive relief from this Court with respect to the Return to Work grievance claims that are the subject of the instant motion. Not only have the Unions not properly briefed the issue of whether they are entitled to such relief – and therefore the issue has not been presented to this Court in the proper procedural fashion – the Unions are well aware of the possible legal impediments to such relief at this juncture of the litigation.[10] Indeed, whether the parties to this

---

[10] Section 8 of the Norris-LaGuardia Act, provides:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

29 U.S.C. §108. In *Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, v. Toledo*, 321 U.S. 50, 56-57, 64 S.Ct. 413, 417 (U.S. 1944), the United States Supreme Court stated the following with respect to Section 8:

> Section 8 demands this method be exhausted before a complainant to whom it is available may have injunctive relief. Broadly, the section imposes two conditions. If a complainant has failed (1) to comply with any obligation imposed by law or (2) to make every reasonable effort to settle the dispute, he is forbidden relief. The latter condition is broader than the

lawsuit have complied with the "obligations imposed by law" or made "every reasonable effort" to negotiate the dispute in question is one of the ultimate issues to be determined at trial.

Considering the foregoing, the Court makes no substantive finding *whatsoever* as to this core issue at this time, and the Unions' request for an order that PHI immediately resume the grievance procedures is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Court concludes the Return to Work claims are "minor disputes." This Court further finds special circumstances exist as PHI has suspended the grievance process for a substantial, if not indefinite, period of time and thus rendered the process ineffective and unavailable. *Carmen*, 894 F.2d, 1463, 1468 n.10 (5th Cir. 1990).

Thus, this Court finds, under these circumstances, this Court has jurisdiction over the otherwise "minor disputes." This Court further finds it has jurisdiction, as well, over those disputes alleged as direct violations of the RLA to determine if they, in fact, are such direct violations as the Union alleges. The Unions argue PHI's actions in failing to return the affected pilots to work were taken for retaliatory purposes and/or for the purpose of weakening or destroying the Unions, and argues such actions could constitute direct statutory violations of the RLA. This Court concludes the Unions at this juncture have made a threshold *prima facia* showing of the existence of a claim for retaliation or anti-union animus under the RLA, and PHI has not met that argument sufficiently with its own evidence and argument, such that dismissal on those grounds is not proper at this

---

former. One must not only discharge his legal obligations. He must also go beyond them and make all reasonable effort, at the least by the methods specified if they are available, though none may involve complying with any legal duty.

juncture.

For the foregoing reasons, PHI's Motion to Dismiss Various Claims Raised in the "Return to Work Case" for Lack of Subject Matter Jurisdiction [Doc. 88] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 16 day of November, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE