**RECEIVED**

DEC - 4 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

PHI, INC.

CIVIL ACTION NO. 06-1469 (LEAD)
06-2243 (MEMBER)

VERSUS

JUDGE DOHERTY

OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION AND
OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION LOCAL 108

MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court is the Motion in Limine to Exclude Certain Testimony of Peter Kiefer, Esq. filed by the Office of Professional Employees International Union ("OPEIU") and its Local Union 108 ("Local 108") (collectively, "the Unions") [Doc. 96]. In their motion, the Unions seek to exclude Kiefer's anticipated testimony regarding: (1) PHI's intentions concerning the resolution of the return to work issues; (2) the instructions Kiefer received from PHI regarding the return to work issues; (3) the reports Kiefer provided to PHI about resolving the return to work issues; (4) certain non-privileged documents exchanged between Kiefer and the Unions' representative, Mr. Melvin S. Schwarzwald; and (5) any confidential conversations between Kiefer and Schwarzwald, as well as any confidential documents Kiefer and Schwarzwald exchanged during that time. The Unions seek exclusion of such testimony on grounds that it is irrelevant and/or unnecessary and will lead to the disqualification of Melvin S. Schwarzwald as the Unions' trial attorney. The motion is opposed by PHI, Inc.'s ("PHI") [Doc. 103], and the Unions have filed a reply brief [Doc. 108]. For the following reasons, the Unions' motion is DENIED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In March 2000, OPEIU was certified by the National Mediation Board ("NMB") as the collective bargaining representative of the flight deck crewmembers ("pilots") employed by PHI. Shortly after the NMB certification, OPEIU entered into negotiations with PHI in an attempt to reach an initial collective bargaining agreement ("CBA").  As a result of these negotiations, a CBA was confected between PHI and the Unions on July 12, 2001, which was effective June 1, 2001 through May 31, 2004.

On or about February 19, 2004, negotiations between PHI and the Unions began in an effort to reach a successor CBA.  After approximately 39 days of direct bargaining and more than 38 additional bargaining sessions mediated by the NMB, no successor CBA was reached.  On July 28, 2006, the NMB issued a letter advising PHI and the Unions that as of 12:01 a.m. EDT on August 28, 2006, the parties would be free to engage in economic self-help.

On August 28, 2006, PHI filed suit in this court, seeking a declaratory judgment and permanent injunctive relief against the Unions under the Railway Labor Act, 45 U.S.C. §151, *et seq.* ("RLA"), on grounds the Unions violated Section 2, First of the RLA by bargaining in bad faith and failing to exert reasonable efforts to reach an agreement with the Company (the "Bad Faith Bargaining Case").  PHI also seeks to enjoin the Unions from further bargaining in bad faith and require them, henceforth, to bargain in good faith with the intent of reaching an agreement.

On September 20, 2006, the Unions instituted a strike of PHI's pilots.  On November 10, 2006, the Unions advised PHI that the pilots were ending the strike and making an unconditional offer to return to work.  On November 27, 2006, the Unions filed a complaint for preliminary and permanent injunctive relief, declaratory judgment, damages, and other relief under the Railway Labor

Act, 45 U.S.C. §151, *et seq.* and 28 U.S.C. §2201 (the "Return to Work Case").  In the "Return to Work Case," the Unions allege that PHI has ignored the unconditional return to work offer and/or placed illegal conditions on the offer, in violation of the RLA and La. Rev. Stat. §23:822.[1]

During the communications between PHI and the Unions that led to the Unions' Return to Work lawsuit, Peter Kiefer, an attorney, represented PHI.[2]  On November 13, 2006, Kiefer sent Melvin S. Schwarzwald, also an attorney and a representative of the Unions, an email "to acknowledge receipt of [OPEIU international representative] Mr. Bohelski's November 10, 2006 letter offering the unconditional return to work of the remaining strikers, and announcing the immediate cessation of all strike activities."[3]  In this e-mail, Kiefer further stated: "A written confirmation from [OPEIU President] Mr. [Michael] Goodwin designating you as the OPEIU's representative with binding authority to resolve all issues involved or implicated in the offer would also be appreciated."[4]

On November 15, 2006, Schwarzwald sent Kiefer an email, attaching thereto a letter from Goodwin to Kiefer, which states in part:

> This letter is in response to your email to OPEIU General Counsel, Melvin S. Schwarzwald that was sent on Monday, November 13, 2006. ... *In addition, this letter confirms that OPEIU General Counsel, Melvin S. Schwarzwald has the authority to resolve any issues that need to be resolved in regard to the unconditional offer to return to work and related matters.*[5]

---

[1] This Court previously ruled that the Unions' state "right to work law" claims pursuant to La. Rev. Stat. §23:822 are preempted by federal law, and, consequently, these claims have been dismissed. [Docs. 139 & 140].

[2] See January 5, 2007 Deposition of Peter Kiefer, attached as Exhibit B to Doc. 96, at pp. 6-7, 10-11.

[3] See Declaration of Richard Rovinelli, attached as Exhibit C to Doc. 96.

[4] Id.

[5] See Declaration of Richard Rovinelli, attached as Exhibit D to Doc. 96 (emphasis added).

It is undisputed that Schwarzwald and Kiefer subsequently entered into a confidentiality agreement that covered certain of their communications concerning the return to work issues.[6] Pursuant to that agreement, "the content of [Kiefer's and Schwarzwald's] conversations were not to be admissible in any court or proceeding, [and] . . . documents marked as inadmissible under Rule 408 would also be treated in that manner."[7] Kiefer and Schwarzwald also exchanged a handful of non-confidential documents concerning return to work issues.[8] PHI contends the majority of those documents contain ambiguities, while the Unions argue that the documents contain no ambiguities.[9]

The Unions propounded interrogatories to PHI addressing whether Kiefer would be called to testify regarding the alleged ambiguities contained in the non-confidential documents; PHI responded that Kiefer will "testify regarding such ambiguities, as well as regarding other matters, including instructions he received in connection with resolving return-to-work issues with the

---

[6] See January 5, 2007 Deposition of Peter Kiefer, attached as Exhibit B to Doc. 96, at pp. 10-11.

[7] Id. at 11

[8] See PHI, Inc.'s Answers To the Unions' Second Interrogatories, attached to Doc. 96 as Exhibit E, at pp. 1-2, 5; PHI, Inc.'s Answers To Union's Third Interrogatories, attached to Doc. 96 as Exhibit F, at pp.1-2.

[9] Specifically, PHI has identified: (i) six ambiguities in Kiefer's November 13, 2006 e-mail to Schwarzwald (Doc. 96, Exhibit C); (ii) eight ambiguities in Kiefer's November 16, 2006 e-mail to Schwarzwald (Exhibit G); (iii) fifteen (15) ambiguities in Kiefer's November 22, 2006 e-mail to Schwarzwald (Exhibit H); (iv) twenty-five (25) ambiguities in the attachment to Kiefer's November 22, 2006 e-mail to Schwarzwald (Exhibit H); (v) three ambiguities in Kiefer's November 27, 2006 e-mail to Schwarzwald (Exhibit I); (vi) numerous ambiguities, including four broad categories of ambiguities, in the attachment to Schwarzwald's December 1, 2006 e-mail to Kiefer (Exhibit J); and (vii) five ambiguities in Schwarzwald's December 1, 2006 e-mail to Kiefer (Exhibit K).

Arguing that "ambiguous" is defined as "reasonably susceptible to more than one interpretation," PHI contends that the following words and/or phrases contained in the communications that were exchanged between he [sic] and Schwarzwald in the non-confidential documents are "patently" ambiguous: "corporate campaign;" "move forward in this process;" "potential returnees;" "all issues involved or implicated in the offer;" "given conflicting claims;" "pilots on whose behalf the return to work offer is being made;" "reasonably necessary;" "illegal;" "Bidding seniority;" "open positions;" "Corporate campaign-type activities and initiatives;" "other concerns you have raised;" "available vacancy;" "Preliminary Return to Work Agreement- DRAFT;" "OPEIU's correspondence;" "Leaving past animosities behind;" "new PHI;" "currency;" and "the parties'..... respective legal positions."

unions, PHI's intent in resolving such issues, . . . . and reports he conveyed to other PHI officials concerning his progress, or lack of progress, in resolving return-to-work issues and the reasons for same."[10]

In the instant motion, the Unions contend Kiefer's testimony concerning the aforementioned issues should be excluded on grounds the information was not communicated to the Unions and, therefore, is not relevant.  To the extent Kiefer is expected to testify concerning the non-privileged documents, the Unions argue the documents contain no ambiguities and, therefore, Kiefer's testimony concerning those documents is irrelevant and/or unnecessary.  Finally, the Unions argue if Kiefer testifies, Schwarzwald will be forced to testify and thereby may be disqualified from acting as trial counsel on behalf of the Unions.  The Unions therefore seek an order from this Court barring Kiefer from testifying about such issues.

## II.    LAW AND ANALYSIS

The Unions seek to frame the issue before the Court in terms of contract law and the parol evidence rule.  In so framing the issue, the Unions rely heavily on *Haeberle v. Texas Int'l Airlines*, 738 F.2d 1434, 1440-41 (5th Cir. 1984), a contract-construction case in which the Fifth Circuit interpreted *Pennsylvania's* parol evidence rule and held that discussion and statements regarding a witnesses's thoughts and intentions are not admissible if those thoughts and intentions are not communicated to others. The Unions rely on the *Haeberle* case for the proposition that, to the extent that any of Kiefer's thoughts and intentions concerning the return to work issues were not communicated by Kiefer to Schwarzwald – and thereby from PHI to the Unions – such thoughts and intentions cannot be admissible at trial to prove what PHI's intentions and/or motivations were

---

[10] See Exhibit E at p. 5.

-5-

regarding the return to work issues. The Unions also allege that PHI's motivations and intentions are irrelevant, and that what *is* relevant is what PHI actually said and did. The Unions frame the issue incorrectly.

This issue now before the Court does not key upon contract interpretation. Indeed, there is no contract sought to be enforced as to the present issue before the Court and, as PHI argues, "no 'meeting of the minds' to be found by resort to extrinsic evidence.'"[11] Rather, the issue is more properly framed as an issue concerning the *admissibility of relevant evidence*. Thus, the initial inquiry this Court must make is whether the testimony sought to be excluded is relevant to any claims and/or defenses that have been asserted by the parties and if so, for what purpose and in what procedural context.

"'Relevant evidence' means evidence having any tendency to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401 (emphasis added). "*All* relevant evidence is admissible, except as otherwise provided by the Constitution. . ., by Act of Congress, by [the Federal Rules of Evidence,] or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 402 (emphasis added). "Whether a fact is of consequence is determined not only by the rules of evidence but by substantive law as well." J. Weinstein and M. Berger, *Weinstein's Federal Evidence, Second Edition*, Vol. 2, § 401.04[3][b] (2007, J. McLaughlin, Ed.), citing *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 838 (10th Cir. 1988), *cert. denied*, 490 U.S. 1021 (1989).

The substantive law applicable here, RLA Sections 2, Third and Fourth, 45 U.S.C. § 152,

---

[11] Doc. 103, p. 6, n.3.

makes PHI's motive for its challenged actions dispositive of certain issues before the Court. **The Unions have brought suit** pursuant to RLA Sections 2, Third and Fourth, alleging PHI acted in bad faith and with anti-union animus. Thus, PHI must prove its intentions and/or motivations in taking the actions that it did were motivated *not* by anti-union animus but by some other legitimate, business reason. Thus, the Unions, with the claims they have made against PHI, have put PHI's *intentions* behind their actions, at issue. Thus, PHI must respond with evidence to disprove the Unions' claims.

In *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir.), *reh'g. denied*, 732 F.2d 941 (1984), the Fifth Circuit noted that a violation of 2, Fourth of the RLA, ". . . consists of . . . adverse action that is *based* in whole or in part *on anti-union animus* – or [on whether] the employee's protected conduct was a substantial or *motivating factor* in the adverse action . . . ." (emphasis added). In *Roscello*, the Fifth Circuit employed a burden-shifting analysis much like that found in traditional employment-tort cases. Under this analysis, the employee is required to establish a *prima facie* claim that the company's actions were motivated by anti-union animus. If the employee satisfies this burden, "the employer can avoid the finding that it violated the statute by demonstrating by a preponderance of the evidence that the worker would have been fired even if he had not been involved with the Union." 726 F.2d at 222-23, citing *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 2471, 76 L.Ed.2d 667 (1983). Thus, to avoid liability, the employer must show that it would have taken the same action even in the absence of union animus.[12]

---

[12] This Court notes that the Seventh Circuit has employed the same burden-shifting analysis in similar cases. *See, e.g., Lebow v. American Trans Air*, 86 F.3d 661, 666 (7th Cir. 1996) (same burden-shifting method employed in unlawful discharge cases under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, ("NLRA") applied to

In the instant case, Keifer is the representative who acted for and on behalf of PHI in certain of the relevant negotiations at issue. Thus, Keifer's knowledge of PHI's conduct, as well as the reasoning behind that conduct, is placed at issue by the allegations made by the Union. The record shows Kiefer first contacted Schwarzwald on Monday, November 13, 2006. Two weeks later, on November 27, 2006, the Unions filed the "Return-to-Work" lawsuit, alleging PHI ignored the unconditional return to work offer and/or placed illegal conditions on the offer, specifically targeting pilots who enthusiastically and zealously supported the Unions. Implicit in the Unions' allegations is that what Kiefer said and did on behalf of and as PHI's representative during the two-week negotiation process, was a violation of the RLA.

In the Return to Work lawsuit, the Unions allege PHI acted with anti-union animus toward its pilots in negotiating their return to work, thereby calling into question and putting at play PHI's intentions and/or motivations for the conduct the Unions now allege to have been hostile actions directed against the affected pilots. Thus, the trier of fact must determine whether PHI's actions were motivated by anti-union animus, or whether there were other legitimate reasons for PHI to have taken the actions it took. Thus, at trial, the Unions put on evidence to prove their allegations of PHI's bad faith and/or anti-union animus in order to prove their claims, the burden, then, will shift to PHI to rebut that evidence by showing that it would have taken the same actions with regard to the affected pilots in the absence of union hostility. The *only* way that PHI can rebut the Unions' claims and prove its defenses – that is, the only way that PHI can prove that the actions it took were

---

cases brought under the RLA). The Court acknowledges that the *Roscello* and *Lebow* cases are not factually on point. However, the cases are not cited because they are factually similar. Rather, the cases are cited to show the analytical framework courts should employ in determining whether evidence is admissible in a case wherein an employee alleges anti-union animus against an employer.

not motivated by anti-union animus – is to explain *what* PHI's motivations were and *why* it took the actions that it did. Thus, the testimony of the representative acting on behalf of and for PHI during those negotiations will be pivotal *in meeting the evidence* presented by the Union to prove their allegations against PHI. Thus, Kiefer's thoughts and intentions and instruction received from PHI is relevant to both the Unions' claims and PHI's defenses. *See generally Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 429 (5th Cir. 2006) (where evidence was offered not to prove culpability, but rather *to rebut a theory of liability*, court held that evidence should have been admitted at trial, and failure to do so was reversable error, requiring jury verdict to be vacated and case remanded) (emphasis added).

With the foregoing in mind, this Court concludes that, if the Unions put on evidence of PHI's anti-union animus at trial, Kiefer's testimony – whether it concerns PHI's intentions concerning resolution of the return to work issues, the instructions Kiefer received from PHI, the reports Kiefer provided to PHI, the alleged ambiguities in the non-privileged documents, *or any other matter that is relevant to the evidence put on by the Unions at trial*[13] – is relevant to the issue of whether PHI acted with anti-union animus in negotiating the affected pilots' returns to work. Thus, the question will then become whether there is any basis to disallow otherwise admissible evidence. Both parties agree certain aspects of the negotiations were the subject of a confidentiality agreement. However, should *the Unions* choose to address the confidential conversations between Kiefer and Schwarzwald or any documents marked confidential, as part of their evidence at trial, *the Unions* will have waived

---

[13] The Unions argue that because PHI did not specifically address each area of anticipated testimony from Kiefer but rather only argued the *general* relevancy of all Kiefer's testimony, the Unions' motion stands partially unopposed. Because the Court agrees with PHI's framing of the issues before the Court and agrees that the issue is one of general relevancy of Kiefer's testimony, this Court concludes that PHI's opposition brief is sufficient to oppose all arguments set forth by the Unions in their motion.

the agreement and opened the door to PHI, also, addressing those otherwise confidential communications and *Kiefer could be permitted to testify concerning those confidential communications and documents in rebuttal.*[14] Indeed, Kiefer's testimony is necessary for PHI to rebut the *prima facie* case of anti-union animus *that the Unions themselves have set forth and put at play in this litigation.* Once the Unions open the door and put this evidence on at trial, Kiefer will be permitted to testify *as to any matter that is relevant to the evidence that is put on by the Unions concerning these issues.* Should the Unions choose not put on any evidence of the alleged bad faith and anti-union animus actions of PHI allegedly made through Kiefer, a different question would be presented. Should PHI attempt to introduce such evidence in its case in chief, this Court will have to determine at that time whether the evidence is relevant to any other issues before the Court, at that time.

## II.    THE LACK OF PROFESSIONALISM ON THE PART OF COUNSEL

In a case that has been marked by antagonistic and petulant behavior on the part of the attorneys for both parties on numerous occasions, the Court notes the briefs submitted by the parties in connection with the instant motion are particularly pugnacious. In its motion in limine, the Unions use the word "absurd" or "absurdity" a total of six times to describe the alleged ambiguities that PHI has identified in the non-privileged documents exchanged by Kiefer and Schwarzwald. The Unions also allege that PHI has intentionally acted improperly in seeking to have Kiefer testify in

---

[14] In a footnote in its opposition brief, PHI acknowledges that PHI has heretofore honored Kiefer's and Schwarzwald's agreement that their discussions, and certain designated documents, remain confidential and inadmissible in this action under Rule 408 of the Federal Rules of Evidence. However, PHI argues that "FRE 408(b) permits the use of such evidence for the purpose of 'negating a contention of undue delay;' precisely the contention the Unions made in their complaint and in their motion for injunctive relief." The Court cannot say at this time whether testimony concerning the confidential conversations or documents will be admissible, because the Unions have not yet put on their case. Should the Unions implicate these confidential materials at trial, they open the door to PHI being able to put on testimony regarding the confidential materials in rebuttal.

-10-

an attempt to deprive the Unions of their trial attorney, stating "As a result, PHI has identified an *absurd* list of allegedly ambiguous terms *to support its indefensible position and to deny the Unions' their choice of trial counsel.*"[15] The Unions repeat their charge that PHI's ambiguities are "absurd" in their reply brief.

For its part, in responding to the Unions' claim that PHI is attempting to cheat the Unions out of their choice of trial counsel, PHI asserts "*[t]his infantile shifting of moral responsibility is typical of the Unions' approach to this entire case.*"[16] Furthermore, the first five pages of PHI's opposition memorandum is spent conjuring supposed scenarios in which the Unions developed their strategy with respect to filing the instant motion in limine and posing facetious questions to the Court concerning the Unions' motivations for doing so.

Rule 11 of the Federal Rules of Civil Procedure was promulgated to check abuses in the signing of pleadings and states that, "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,– **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...." Fed.R.Civ.P.11.

Counsels' remarks concerning each other – identifying opposing counsels' arguments as "absurd" and "infantile" – are demeaning, not only to each other but to the Court and the process of justice within our system of justice.  As the Fifth Circuit Court of Appeals has previously held,

---

[15] Doc. 96, Memorandum in Support of Motion to Exclude Kiefer's Testimony, at p.13 (emphasis added).

[16] Doc. 103, p.1 (emphasis added).

"[a]busive language towards opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." *Coats v. Pierre*, 890 F.2d 728, 734 (5ᵗʰ Cir.1989), *cert. denied*, 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 44 (1990).

The goals of Rule 11 sanctions include deterrence, punishment, and compensation, but the "central purpose of Rule 11 is to deter baseless filings in District Court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *see also Willy v. Coastal Corp.*, 915 F.2d 965, 968 (5ᵗʰ Cir.1990), *aff'd*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (citing *Thomas v. Capital Security Serv., Inc.*, 836 F.2d 866, 879 (5ᵗʰ Cir.1988 (*en banc*)). As such, the standard set forth in Rule 11 is an objective one, and a court need not find bad faith in order to sanction an attorney or party. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991), citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 546, 111 S.Ct. 922, 932, 112 L.Ed.2d 1140 (1991).

This is not the first time this Court has called attention to the conduct of counsel and the manner in which they have chosen to conduct themselves within this case. The time of federal judges is scarce. This Court has well over 300 civil cases assigned to it, and in excess of 67 criminal defendants, and parties sometimes have to wait months to get a motion heard. In addition, parties often have to endure long delays before a civil case is tried. To the extent this Court is required to spend more time reading the briefs of counsel who are more concerned with hurling insults at each other than in focusing on the issues to be decided by the Court, all other litigants trying cases in this Court are prejudiced.

Notwithstanding the foregoing, and noting that the attorneys on both side of this case have

made disparaging and unprofessional remarks about the other and that there do not appear to be any remaining briefs in which the attorneys engage in such conduct, the Court declines to assess sanctions against either party at this time.  However,  **this Court cautions counsel that future attempts to demean opposing counsel will not be tolerated and will result in sanctions against the offending attorney.**

## IV.   CONCLUSION

For the foregoing reasons, the Unions' Motion in Limine to Exclude Certain Testimony of Peter Kiefer, Esq. [Doc. 96] is DENIED.

THUS  DONE  AND  SIGNED  in  Lafayette,  Louisiana,  this  _____  day  of  _____, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE