**RECEIVED**

DEC - 7 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

PHI, INC.

VERSUS

OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION AND
OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION LOCAL 108

CIVIL ACTION NO. 06-1469 (LEAD)
06-2243 (MEMBER)

JUDGE DOHERTY

MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court is the "Motion in the Return to Work Suit for Declaratory

Judgment and/or Preliminary Injunction Prohibiting PHI, Inc. from Requiring Pilots to Submit to

Psychological Examinations or Conditioning Their Return to Work on Such Examinations" filed by

the Office of Professional Employees International Union ("OPEIU") and its Local Union 108

("Local 108") (collectively, "the Unions") [Doc. 73]. In their motion, the Unions seek a declaratory

judgment from this Court determining that requiring seven pilots who desire to return to work to first

submit to a psychological examination exceeds the bounds of the return to work agreement

negotiated by the parties, and requiring PHI to immediately reinstate the pilots to employment

without the need to submit to such examinations.  Alternatively, the Unions seek a preliminary

injunction enjoining PHI from requiring the seven pilots to submit to a psychological examination

as a condition of their return to employment and ordering PHI to immediately reinstate the pilots to

employment.[1]  The motion is opposed by PHI, Inc. ("PHI") [Doc. 89].[2]  For the following reasons,

the Unions' motion is DENIED.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

In March 2000, OPEIU was certified by the National Mediation Board ("NMB") as the

collective bargaining representative of the flight deck crewmembers ("pilots") employed by PHI.

Shortly after the NMB certification, OPEIU entered into negotiations with PHI in an attempt to reach

an initial collective bargaining agreement ("CBA").  As a result of these negotiations, a CBA was

confected between PHI and the Unions on July 12, 2001, which was effective June 1, 2001 through

May 31, 2004.

On or about February 19, 2004, negotiations between PHI and the Unions began in an effort

to reach a successor CBA.  After approximately 39 days of direct bargaining and more than 38

additional bargaining sessions mediated by the NMB, no successor CBA was reached.  By letter

dated and faxed July 14, 2006, the Director of the NMB's Office of Mediation Services, Lawrence

E. Gibbons, notified the parties that, "[d]espite the [NMB's] best efforts to bring about an amicable

settlement through mediation, the parties have failed to reach agreement disposing of their

[collective-bargaining] dispute."[3]  Mr. Gibbons also notified the parties that,

> [i]n accordance with Section 5, First of the Railway Labor Act [45 U.S.C. § 155,
> First], the [NMB] therefore now requests and urges that you enter into an agreement

---

[1]  The Unions filed an amended memorandum in support of the instant motion on May 16, 2007, Doc. 81, to clarify certain matters regarding an agreed protective order protecting the identities of the affected pilots.  The amended memorandum is otherwise identical to the first-filed memorandum.

[2]  In its opposition brief, PHI also incorporates in its entirety its memorandum in support of its first-filed Motion to Dismiss Claims for Injunctive Relief, filed on December 20, 2006 [Doc. 25 in Civil Action 06-2243].  PHI withdrew that motion on January 11, 2007, after the Unions agreed to withdraw their first request for injunctive relief.  See Minutes of Court, January 11, 2007, Doc. 49, Civil Action No. 06-2243.

[3]  Declaration of Peter Kiefer, attached to Doc. 25, Exhibit "A" (Civil Action No. 06-2243, the "Return to Work" Lawsuit).

to submit the controversy to arbitration as provided in Section 8 of the Act [45 U.S.C. § 158.][4]

By letter dated and faxed the same day, July 14, 2006, Mr. Michael Goodwin, President of the OPEIU, wrote to Mr. Gibbons:

> Thank you for your letter today in which you offered the services of the National Labor [sic, Mediation] Board to conduct an arbitration as provided for in Section 8 of the Act.
>
> * * *
>
> *However, we must unconditionally reject the proffer to arbitrate and once again request a release in order to seek self-help measures. . . .*[5]

On July 28, 2006, the NMB issued a letter advising PHI and the Unions that as of 12:01 a.m. EDT on August 28, 2006, the parties would be free to engage in economic self-help.

On August 28, 2006, PHI filed suit in this court, seeking a declaratory judgment and permanent injunctive relief against the Unions under the Railway Labor Act, 45 U.S.C. §151, *et seq.* ("RLA"), on grounds that the Unions violated Section 2, First of the RLA by bargaining in bad faith and failing to exert reasonable efforts to reach an agreement with the Company (the "Bad Faith Bargaining Case"). PHI also seeks to enjoin the Unions from further bargaining in bad faith and require them, henceforth, to bargain in good faith with the intent of reaching an agreement.

On September 20, 2006, the Unions instituted a strike of PHI's pilots. On November 10, 2006, the Unions advised PHI that the pilots were ending the strike and making an unconditional offer to return to work. On November 27, 2006, the Unions filed a complaint for preliminary and

---

[4] Id.

[5] See Kiefer Declaration, Exhibit "B" (emphasis added). See also Doc. 7 in Civil Action 06-1469, the Unions' Answer to PHI's Complaint, ¶40 ("The Unions admit they rejected the NMB's proffer of binding arbitration. . . .").

permanent injunctive relief, declaratory judgment, damages, and other relief under the Railway Labor Act, 45 U.S.C. §151, *et seq.* and 28 U.S.C. §2201 (the "Return to Work Case"). In the "Return to Work Case," the Unions allege that PHI has ignored the unconditional return to work offer and/or placed illegal conditions on the offer, in violation of the RLA and La. Rev. Stat. §23:822.[6]

The CBA in place between the parties states:[7]

> When the Employer believes that there are grounds to question a pilot's physical or mental condition to remain on flight status, the Employer may require that such pilot be examined by a FAA designated aeromedical examiner (AME) selected by the Employer.

See Motion to Dismiss, Rovinelli Declaration, ¶ 6 and Exhibit F).

PHI began conducting return to work interviews in late October 2006. Ultimately, on January 11, 2007, the Unions and PHI entered into a preliminary Return to Work Agreement, which was approved by the Court.[8] Sometime after January 11, 2007, PHI identified eleven pilots who would be required to undergo psychological examinations before being permitted to return to work. Four of the eleven pilots have elected not to return to work at PHI, therefore, the Unions do not seek relief on behalf of these pilots as part of the instant motion. Consequently, there are seven pilots who are currently affected by PHI's decision to require psychological examinations.

In the instant motion, the Unions' arguments are summarized as follows: The return to work interviews were conducted by PHI personnel who have no medical or psychological background,

---

[6] This Court has previously ruled that the Unions' state "right to work law" claims pursuant to La. Rev. Stat. §23:822 are preempted by federal law and, consequently, these claims have been dismissed. [Docs. 139 & 140].

[7] In its ruling on PHI's Motion to Dismiss Various Claims Raised in the "Return to Work Case" for Lack of Subject Matter Jurisdiction, this Court noted both parties essentially assumed, for the limited purposes of that motion only, there *is* an existing, albeit expired, CBA such that the disputes raised would be deemed, for the purposes of that motion only, minor disputes [Doc. 145]. With respect to the instant motion, neither party argues that there is *no* existing CBA between the parties. Thus, the Court's assumption that there is an existing CBA between the parties with respect to the previously-filed motion is also applicable to the instant motion.

[8] See January 11, 2007 Minutes of Court, Doc. 49, Civil Action No. 06-2243.

-4-

which calls into question the validity of these individual's findings; nothing occurred during any of the pilots' interviews to warrant a psychological evaluation; the examinations are targeted against pilots who have been active Union supporters and/or who are long-term PHI employees, thereby evidencing anti-union animus in the return to work process; requiring the pilots to submit to such examinations violates the RLA, as it erodes the employer-employee relationship; such examinations also exceed the return to work agreement sanctioned by the Court on January 11, 2007; and subjecting the affected pilots to compulsory psychological evaluations would be a career-threatening event for the affected pilots, because the pilots would be required to disclose this information on their air medical certification applications, which could adversely affect their careers forever. The Unions therefore seek the requested declaratory and/or injunctive relief.

In response, PHI argues the CBA in effect between the parties *expressly* provides for psychological examinations in instances where "the [e]mployer believes that there are grounds to question a pilot's physical or mental condition to remain on flight status." Most significantly, PHI also argues the Unions are not entitled to injunctive relief in the instant case, because the Unions unconditionally rejected the NMB's proffer of voluntary interest arbitration. Consequently, PHI argues the Unions do not have "clean hands" with respect to their bargaining in the underlying labor dispute and cannot now obtain injunctive relief in the ancillary return to work lawsuit.

## II.    LAW AND ANALYSIS

### A.    Major v. Minor Dispute

PHI first argues, as it did in its Rule 12(b)(1) Motion to Dismiss Various Claims Raised in the "Return to Work Case" for Lack of Subject Matter Jurisdiction [Doc. 88], that this Court does not have subject matter jurisdiction over the Unions' psychological examinations claims, because

the claims present minor disputes that must first be presented to the System Board of Adjustment. As this Court has previously ruled, and for the reasons set forth in the Court's ruling on the foregoing motion [Doc. 145], this Court has subject matter jurisdiction over the Unions' psychological examinations claims.

**B.    Declaratory Relief**

The Court notes PHI argues there is no procedural vehicle for the filing of a motion for declaratory judgment. This Court agrees. A declaratory judgment action is an independent civil action, and the Federal Rules of Civil Procedure do not recognize or contemplate the filing of a "motion" for declaratory relief in an already-instituted civil action. However, as this Court is denying the instant motion, the Court need not address the procedural vehicle in which the requested relief has been presented.

Moreover, there appear to be genuine issues of material fact regarding whether the Unions would be entitled to declaratory relief under the facts and circumstances of this case. The Unions argue requiring the psychological examinations evidences anti-union animus on the part of PHI, while PHI argues the CBA in effect between the parties expressly permits PHI to require such examinations under certain circumstances. After review of the briefs, the Court concludes the Unions have failed to present sufficient evidence to carry their burden of showing there is no genuine issue of material fact that they are entitled to declaratory relief given the existence of the CBA; rather the facts surrounding the actions taken and the intent behind those actions are in great dispute. Therefore, the Unions are not entitled to the requested relief by way of a threshold motion, even if such relief were available to them under the procedural vehicle employed herein.

## C.   Injunctive Relief

As previously stated, the Unions seek a preliminary injunction enjoining PHI from requiring the seven pilots to submit to a psychological examination as a condition of their return to employment and ordering PHI to immediately reinstate the pilots to employment.  To be entitled to preliminary injunctive relief in the Fifth Circuit, the Unions must establish the following: (1) a substantial likelihood they will prevail on the merits; (2) a substantial threat they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to PHI; and (4) that granting the preliminary injunction will not disserve the public interest. *Lake Charles Diesel v. General Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003), citing *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1975); *Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788, 791 (5th Cir. 1989), quoting *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1975).

In addition to having to satisfy the foregoing to obtain injunctive relief in this Court, the Unions are also potentially proscribed from obtaining the requested relief by the Norris-LaGuardia Act ("NLGA"), 29 U.S.C. §101, *et seq.*  Section 1 of the NLGA states in relevant part:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunctive relief in a case involving or growing out of a labor dispute, except in a strict conformity with the requirements of this Chapter; .
> . . .

29 U.S.C. §101.

One of those requirements appears in Section 8, the NLGA's so-called "clean hands" provision.  Section 8, 29 U.S.C. §108 states that,

> No restraining order or injunctive relief shall be granted *to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such*

> *dispute either by negotiation or with the aid of any available governmental*
> *machinery of mediation or voluntary arbitration.*

29 U.S.C. §108 (emphasis added).  As the Supreme Court has explained,

> Section 8 demands this method be exhausted before a complainant to whom it is
> available may have injunctive relief.  Broadly, the section imposes two conditions.
> If a complainant has failed (1) to comply with any obligation imposed by law or (2)
> to make every reasonable effort to settle the dispute, he is forbidden relief. The latter
> condition is broader than the former. One must not only discharge his legal
> obligations. He must also go beyond them and make all reasonable effort, at the least
> by the methods specified if they are available, though none may involve complying
> with any legal duty.

*Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, v. Toledo*, 321 U.S. 50, 56-57, 64

S.Ct. 413,417 (U.S. 1944).  The *Toledo* Court further stated:

> The policy of the [RLA] was to encourage use of the nonjudicial processes of
> negotiation, mediation and arbitration for the adjustment of labor disputes [Citations
> omitted]. The over-all policy of the [NLGA] was the same. The latter did not entirely
> abolish judicial power to impose previous restraint in labor controversies. But its
> prime purpose was to restrict the federal equity power in such matters within greatly
> narrower limits . . . . It sought to make injunctions . . . available not only after other
> legally required methods, but after all reasonable methods as well, have been tried
> and found wanting.

*Toledo*, 321 U.S. at 58-59 (footnote omitted) (emphasis added).

In their motion for relief, the Unions do not refer to the CBA provision that expressly permits

PHI to require psychological examinations, nor do they refer to or otherwise discuss the fact that

they, also, refused to participate in arbitration with regard to the underlying labor dispute.

Notwithstanding the Unions' failure to acknowledge these key facts, the Unions would not be

entitled to injunctive relief at this time, if the Unions did not "make every reasonable effort to settle

such dispute either by negotiation or with the aid of any available governmental machinery of

mediation or voluntary arbitration."  In order to determine whether the Unions *legally* refused to

participate in arbitration, this Court will be required to consider evidence of both parties' alleged bad

-8-

faith during the negotiating process, as each party has alleged in its pleadings that the other acted in bad faith.  Additionally, each has argued a different interpretation of the applicable law, however neither fully addresses the application of that prohibition of injunctive relief in this forum's briefing. Consequently, the Unions' motion for injunctive relief must be DENIED at this time for failure of the movant to carry its burden of proof to establish the prima facie case that they are due the relief requested.

First, there remains a true *question of law* regarding whether the Unions are entitled to the particular legal remedy they seek, and movants have not carried their burden to establish a substantial likelihood of success on the merits as to this issue.  Second, there remain *genuine issues of material fact* [9] as to whether the actions of PHI, allowed by the CBA, were nonetheless in bad faith by way of their selection of those pilots involved.  This question by necessity hinges upon credibility and context and movants have not carried their burden to establish, at this juncture, there is a substantial likelihood of success on the merits.[10]  Indeed, there are a multitude of disputed facts regarding whether the return to work interviews were properly conducted by PHI, including whether the interviewers were actually qualified to conduct the interviews; whether the interviews uncovered any actual, legitimate information regarding whether specific pilots exhibited behaviors or signs indicating that a psychological examination should be conducted; whether, to what extent, and under what circumstances PHI has required such examinations in the past; and whether any previously-

---

[9]  The parties are reminded that, during the March 23, 2007 hearing in open court, this Court stated "the crux of who was in good faith and who was in bad faith is the linchpin of this case. So that issue is going to be tried in the motion practice, and in all likelihood it will not be able to be resolved there . . . . which means I will probably have to defer ruling on that point until the entire case is resolved."  See Transcript of March 23, 2007 Hearing, pp. 171-72.

[10]  It should be noted, this Court does not, today, rule there is or is not a substantial likelihood of success on the merits as to either issue; rather, this Court finds movants, in this filing, have not carried their burden to establish that substantial likelihood.

required examinations were required *pursuant to the particular CBA provision that PHI invokes herein.* This Court finds movants have not carried their burden to show a substantial likelihood of the Unions' success on the merits at this stage of the litigation *even if* the legal remedy requested – injunctive relief – were available to the Unions at this time, under the procedural vehicle selected.

Considering the foregoing, the Court concludes movants have not carried their burden to present sufficient evidence and argument for the Court, at this time, to make a determination as to (1) whether the Unions are legally entitled to injunctive relief in light of the Norris-LaGuardia Act, and (2) even if the requested legal remedy is available to the Unions, whether the Unions could establish that there is a substantial likelihood that they would prevail on the merits. Thus, this Court is not in a position to determine the questions of law and fact that remain given the vacuum created by the movants' omissions. Therefore, movants' motion is **DENIED.**

## III.   CONCLUSION

For the foregoing reasons, the Unions' "Motion in the Return to Work Suit for Declaratory Judgment and/or Preliminary Injunction Prohibiting PHI, Inc. from Requiring Pilots to Submit to Psychological Examinations or Conditioning Their Return to Work on Such Examinations"[Doc. 73] is DENIED.

THUS   DONE   AND   SIGNED   in   Lafayette,   Louisiana,   this ___ day   of _____, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-10-