RECEIVED

SEP 1 7 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

PHI, INC.

VERSUS

OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION , THE
OFFICE & PROFESSIONAL EMPLOYEES
INTERNATIONAL UNION LOCAL 108, AND
THE INDIVIDUAL PILOTS

CIVIL ACTION NO. 06-1469 (LEAD)
Consol. w/ 06-2243 & 08-0762

JUDGE DOHERTY

MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court are two motions for summary judgment filed by PHI, Inc. ("PHI"):
(1) Motion for Summary Judgment on Count I of the Unions' Fourth Amended Counterclaim in the
"Bad Faith Bargaining" Case[1] [Doc. 220]; and (2) Motion for Summary Judgment on Count II of the
Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case[2] [Doc. 217]. Both
motions are opposed by the Office of Professional Employees International Union ("OPEIU"),
OPEIU Local Union 108 ("Local 108"), and the individual pilot plaintiffs ("the Individual Pilots")
(collectively, "the Unions") [Docs. 230 & 232, respectively]. For the following reasons, both
motions are DENIED.

### I.    Factual and Procedural Background

The facts and procedural history of this case have been set forth in considerable detail in
previous rulings issued by this Court and will not be restated here.

---

[1] Civil Action No. 06-1469.

[2] Civil Action No. 06-1469.

## II. Law and Analysis

### A. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in <u>Lindsey v. Sears Roebuck and Co.</u>, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also,* <u>Moody v. Jefferson Parish School Board</u>, 2 F.3d 604, 606 (5th Cir.1993); <u>Duplantis v. Shell Offshore, Inc.</u>, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

> [. . . .]
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ( *en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

**B.    Motion for Summary Judgment on Count I in Bad Faith Bargaining Case (Doc. 220)**

In Count I of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" case, the Unions allege as follows:

1.    The Unions' answers and assertions in paragraphs 1 though 45 are incorporated herein by reference, and as if fully set forth herein.

2.    By the conduct described in paragraphs 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 37 and 41 above, *PHI has engaged in bad faith bargaining and breached its obligation under Section 2, First of the Railway Labor Act, 45 U.S.C. §152, First to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions.*

3.    By bargaining directly with employees and bypassing the Unions, the employees chosen representatives; by unilaterally changing working conditions without notice to or agreement with the Unions; and by implementing wages and other terms and conditions of employment greater than those proposed to the Unions, PHI has violated Section 2, Fourth, Sixth and Seventh of the Railway Labor Act, 45 U.S.C. §152, Fourth, Sixth and Seventh.[3]

In their prayer for relief, the Unions seek the following remedies with respect to their back wages claims:

a.    PHI's Complaint be dismissed in its entirety, with PHI taxed with the costs of litigation and the Unions' reasonable attorney's fees;

---

[3] Doc. 196 (emphasis added).

b.      PHI be declared to have breached Section 2, First, Sixth and Seventh of the Railway Labor Act;

c.      PHI be enjoined from its breach of Section 2, First, Sixth and Seventh and be ordered to bargain in good faith . . .[4]

To understand the parties' arguments regarding bad faith, it is necessary to first understand the scope of the parties' duties to negotiate in good faith during a labor dispute. Section 2, First of the RLA requires both carriers and labor organizations to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes

---

[4] *Id.* This Court notes PHI argues it is entitled to summary judgment on the Unions' "bad faith bargaining claims" because the evidence shows PHI did not violate *Section 2, First of the RLA.* In their prayer for relief, the Unions seek "a declaration PHI be declared to have breached Section 2, First, *Sixth and Seventh* of the Railway Labor Act," and that PHI "be enjoined from its breach of Section 2, First, *Sixth and Seventh* and be ordered to bargain in good faith." Neither party has specifically addressed what the duties of the parties are under Section 2, Sixth and Seventh of the RLA in its briefs, as opposed to merely Section 2, First. Nevertheless, Section 2, Sixth of the RLA states:

**Sixth. Conference of representatives; time; place; private agreements**

In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within ten days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: *Provided,* (1) That the place so specified shall be situated upon the line of the carrier involved or as otherwise mutually agreed upon; and (2) that the time so specified shall allow the designated conferees reasonable opportunity to reach such place of conference, but shall not exceed twenty days from the receipt of such notice: *And provided further,* That nothing in this chapter shall be construed to supersede the provisions of any agreement (as to conferences) then in effect between the parties.

Section 2, Seventh of the RLA states:

**Seventh. Change in pay, rules, or working conditions contrary to agreement or to section 156 forbidden**

No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

45 U.S.C.A. §152 (6) & (7).

Because PHI appears, in the instant motion, to only be moving for summary judgment on the Unions' counterclaim that PHI bargained in bad faith in violation of Section 2, First of the RLA, this Court makes no finding with regard to the Unions' counterclaims against PHI for violations of Sections 2, Sixth and Seventh of the RLA.

. . . in order to avoid any interruptions to . . . the operations of any carrier. . . ." 45 U.S.C. §152(1).

Both parties agree the scope and extent of the "duty to exert every reasonable effort" under Section 2, First of the RLA is highly dependent on the facts of the case. Indeed, in deciding whether a party has bargained in bad faith under the RLA, federal courts are required to engage in a very fact-intensive analysis in order to determine the subjective intent of the parties as illustrated by the district court decisions engaging in that exercise. *See, e.g., American Airlines, Inc. v. Air Line Pilots Association*, 169 F.Supp. 777, 793 (S.D.N.Y. 1958) ("The question is rather one of subjective intent, to be determined from the facts and circumstances."); *RLEA v. Boston & Maine Corp.*, 664 F.Supp. 605, 615 (D. Me. 1987) ("[The standard to determine bad faith bargaining claims] requires the Court to evaluate the totality of the Railroads' conduct since bad faith must usually be inferred from circumstantial evidence.". . . . "The controlling determination in these bad faith bargaining claims is the subjective intent of both parties.").[5]

"[T]he duty to 'exert every reasonable effort' imposed by the RLA requires *at least* 'the avoidance of bad faith' as defined under the NLRA, that is, 'going through the motions with a desire not to reach an agreement.'" *See Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 544 (9th Cir. 1992) ("*Horizon Air*"), citing *Chicago & N.W. Ry. Co v. United Transp. Union*, 402 U.S. 570, 597 (1971).[6] Furthermore, "[i]n determining whether a party has violated its statutory duty to bargain in good faith, the [National Labor Relations] Board examines *the totality of the*

---

[5] This Court notes it is not bound by district court decisions. However, due to the nature of labor law and the lack of any uniform standards for labor law in the Fifth Circuit, this Court considers district court cases and cases from other circuits illustrative as they show how other district courts have addressed the legal issues present in this case.

[6] Although the RLA and NLRA do not establish identical bargaining obligations, *Pacific Fruit Express v. Union Pacific*, 826 F.2d 920, 922 (9th Cir.1987), courts may consult NLRA cases "for assistance in construing the Railway Labor Act." *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). *See Horizon Air*, 976 F.2d at 544.

*party's conduct*, both at and away from the bargaining table." *Regency Service Carts, Inc. v. Shopmen's Local Union 455, et al.*, 345 N.L.R.B. 671, 671 (2005) (emphasis added).

In its motion for summary judgment, PHI contends it is entitled to summary judgment on the Unions' claim PHI bargained in bad faith under Section 2, First of the Railway Labor Act, 45 U.S.C. §152(1), because the Unions' own actions indicate PHI's bargaining proposals were made in good faith. Specifically, PHI contends it presented the Unions with an offer during the bargaining process, which the Unions rejected. PHI argues thereafter, the Unions belatedly attempted to accept PHI's final offer after the self-help period commenced, which PHI argues establishes PHI's negotiation stance was not in bad faith *as, in effect, a matter of law*. Thus, PHI contends it fulfilled its "duty to exert every reasonable effort" to reach a negotiated agreement as required by Section 2, First of the RLA. PHI avers the measure of its good faith is found within the facts of this record illustrating "[t]here was a potential for compromise, and the Unions' belief in the acceptability of PHI's final offer is conclusive evidence of that."

The Unions dispute the alleged fact itself which is argued, i.e. that the Union attempted to belatedly accept a final offer made by PHI, contending, instead, that the Unions countered PHI's offer, by significantly enhancing the offer the Unions had previously rejected, only in an attempt to reach a mutually agreeable collective bargaining agreement.[7] Thus, the pivotal fact PHI now relies upon as the foundation of its argument, itself, is a disputed fact. Additionally, the Unions continue to argue PHI engaged in bad faith during the negotiation process in the following ways: (1) PHI refused to provide the Unions with information necessary for bargaining; (2) PHI engaged in regressive bargaining; (3) PHI delayed making a comprehensive proposal to the Unions until the

---

[7] Specifically, the Unions allege they asked PHI to increase the economic offer from approximately $1 million to $1.5 million and, in exchange, the Unions would accept the remaining portions of PHI's final offer.

third day of super-mediation, contrary to its expressed intent; (4) PHI refused to bargain over insurance benefits beyond what PHI was already providing to its employees; (5) PHI made unilateral changes to the terms and conditions of employment during bargaining; (6) PHI unilaterally provided the pilots with terms and conditions of employment more favorable than offered to the Unions during bargaining; and (7) PHI repeatedly showed up late for bargaining sessions.

Furthermore, the Unions contend PHI focuses its motion on only a three-month period during the bargaining process when the entirety of the bargaining process, which took more than two years, must be considered. Finally, the Unions contend in order to determine whether PHI was in bad faith, this Court will have to consider PHI's subjective intent during the bargaining process, which will require the live testimony of witnesses whose credibility must be assessed by the Court. Such determinations, the Unions argue, cannot be made on summary adjudication.

After consideration of the arguments of the parties and the evidence presented at this time, this Court concludes there are genuine issues of material fact that preclude the entry of summary judgment on the Unions' bad faith bargaining claim. The key fact PHI relies upon in support of its argument that PHI was not in bad faith – that the Unions belatedly attempted to accept PHI's final offer – is itself, disputed by the Unions, and thus, a disputed fact and as such cannot afford relief by way of summary judgment. The issue of whether PHI and/or the Unions acted in bad faith during the bargaining process is a linchpin issue in this litigation. To determine whether PHI acted in bad faith, this Court will have to assess PHI's subjective intent during the bargaining process, and likely the Unions' as well, as the two are inexorably intertwined, and in order to do so, it is glaringly apparent the Court will have to engage in credibility determinations, which are again not subject to summary determination. *See, e.g. Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en*

*banc*)(citations and internal quotations omitted) (in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis."). Because credibility assessments and determination of the subjective intent are not matters subject to a summary proceeding, PHI's motion must be denied.

For the foregoing reasons, PHI's Motion for Summary Judgment on Count I of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case [Doc. 220] is DENIED, as there are genuine issues of material fact that preclude the entry of summary judgment on this claim.

## C. Motion for Summary Judgment on Count II in Bad Faith Bargaining Case (Doc. 217)

### 1. The Unions' Claims Against PHI

In Count II of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case, the Unions allege as follows:

4.  The Unions bring this action on behalf of all pilots who were notified by PHI that they were permanently replaced on or after September 20, 2006. The affected pilots on whose behalf the Unions bring this counterclaim are set forth at Exhibit A[8] hereto.

5.  In addition, the following individual pilots bring this action on their own behalf: Cynthia Aber, Howard A. Albecker, Thomas R. Andary, Charles Anderson Jr., F. Park Aten, Robert K. Bailey, Todd Bailey, John R. Ball, Edward Bandy, Art Barker, Jimmy Borger, Jack Bower, Robert E. Brown, Jimmie J. Bryant, Larry Burgoyne, Dwayne Busse, John Bussell, Bryan Butler, Michael Butler, Harry Caldwell, Richard Carroll, Nolan Castille Jr., George Cohan Jr., Jayne Cohan, Terry Cook, Ronald Cooper, Matthew Cordell, Scott Crawford, Jimmy Davis, Jr., Michael Deady, Dean Desormeaux, Stewart Dietrick, Michael Dorsett, Thuong Tran Duc, Michael Eastman, Thomas Eden, Thomas M. Einhorn, Raymond Elliot, Michael Etter, Phillip A. Fallis, Frank A. Gayle, John J. Gaynor Jr., Kimett Geist, Henry Getchell, Steve W. Gilpin, Richard R. Golden, Daniel Goodson, Robert Stanley Gosnell, George Granander, Perry Gray, Jeffery Griffin, Joseph Gubler, Ronald L. Hackney, Gerald

---

[8] Exhibit A, entitled "Union_Deduction_Details-RAR REV.xls" is 6 pages in length, single-spaced, and sets forth the names of individuals with different categories of information, including "employee number," "transaction date," "equipment deduction," "equipment credit," and "owed to employee." *See* Exhibit A, attached to the Unions' Answer to PHI's Complaint and the Unions' Fourth Amended Counterclaim in the Bad Faith Bargaining Suit, Doc. 196.

Harding, Joseph Hargadon, Edward Harper, David P. Hawkins, Frank Haynes, Matthew Hedger, Adam Hite, Thomas Huber, Paul F. Huertas, Cecil Jackson, Eric Jenkins, Herbert Jenssen, Harold Johnson, Glenn Jones, Jr., Richard R. Jones, Timothy Kolysko, John Lanning, Richard D. Laughlin, Chau Van Le, John Linardos, Jeffrey Lines, James D. Long, John Losure, James Maddox, Kevin M. Marx, William McKeever, Joseph R Monroe, Timothy Murphy, James Patton, James Pecnik, Richard Phelps, Richard C. Pierce, Ronald W. Powell, Wayne Purdy, Edwin Ragan, Stephen Ragin, Michael Reilly, Sylvanous Robertson, III, John Rohner, William Rosenbalm, Pierre E. Sallin, Melvin Sayler, Walter Schober, Roger F. Searcy, Norman A. Sherman Jr., Michael Short, John Silva Jr., Ernie Sistrunk, James Skauge, Dennis Smith, William Sorenson, David Squires, Joseph R. St. John, Christopher Steeb, Christian Sterne, John Strickland, Michael Stricklin, Jerold Swinderman, Mark Tate, Lanny Mark Teague, Lanny Mark Teague, aka Teague, Sr., Donald Thielke, Stephen Torres, Gerald Von Antz, Mike Warren, Gary L. Wegner, Lea Weinkauf, John Weinman, Leslie E. White III, Chad Whitehead, Stephan Wilson, and Eric Zill ("the Individual Pilots"). Each of these pilots was notified by PHI that they were permanently replaced on or after September 20, 2006.

6. PHI transmitted what PHI called the "final paycheck" to pilots deemed permanently replaced by PHI, which contained deductions not authorized or agreed to by the pilots.

7. Amicable demand was made by the Unions on behalf of the affected pilots to PHI, requesting that the deductions be rescinded and that the pilots be paid the full amounts due to them.

8. Despite the Unions' amicable demand, PHI failed and refused to pay the pilots the amounts due to them.

9. PHI's failure to pay the pilots the full amounts due to the pilots is arbitrary and not in good faith.

10. Subsequent to the Unions' amicable demand to PHI that it rescind the deductions and that the pilots be paid the full amounts due them and PHI's failure to do so, certain of the affected pilots returned to work at PHI. Upon these pilots' return to work, PHI reimbursed certain of these pilots for the deductions. Upon information and belief, the attached Exhibit A details the dates and amounts that were deducted from the pilots' paychecks and the date and amount (where applicable), of reimbursement made by PHI.

11. The failure of PHI to timely make payments to the pilots of the amounts owed despite amicable demand, is in violation of La. R.S. 23:631, and because PHI's actions are not in good faith, the pilots are entitled to liquidated damages pursuant to La. R.S. 23:632.

In their prayer for relief, the Unions seek the following remedies with respect to their back wages claims:

     d.     PHI be ordered to pay to the pilots, including but not limited to the Individual Pilots, all amounts unlawfully deducted from their final paychecks which have not yet been reimbursed, pursuant to La. R.S. 23:631;

     e.     PHI be ordered to pay to the pilots, including but not limited to the Individual Pilots, liquidated damages pursuant to La. R.S. 23:632;

     f.     PHI be ordered to pay the Unions their reasonable attorneys' fees pursuant to La. R.S. 23:632; and

     g.     the Unions and the Individual Pilots be granted such further relief as they may be entitled to under law and equity and that the Court deems just and proper.[9]

As an initial matter, this Court notes, throughout their briefing on the "back wages" issue, both PHI and the Unions refer to the affected pilots collectively as the "Individual Pilots." With few exceptions, no specific pilot is identified by name,[10] and neither set of briefing states, in any cogent manner, whether the pilots named in either the Unions' Fourth Amended Complaint as an "Individual Pilot," or listed in the table appearing in Exhibit "A," either returned to work for PHI or were permanently discharged, that is, their employment with PHI was actually severed. Furthermore, it is unclear to this Court – from the evidence presented in the parties' briefs – whether there is any overlap between the pilots named as "Individual Pilots" in the body of the Unions' Fourth Amended Counterclaim and the pilots listed in Exhibit "A."

---

[9] Doc. 196.

[10] The exception to this is the Unions' references to a small number of pilots – for the purpose of illustrating PHI's bad faith – who were not issued certain equipment for which they were charged, or who were charged before being notified they had to return equipment, or who otherwise had wages improperly withheld.

## 2.    PHI's Motion for Summary Judgment and the Unions' Response

In its motion, PHI contends it is entitled to summary judgment on the Unions' claim for back

wages, because actual discharge or resignation of the pilots is a necessary predicate for relief under

La. R.S. §§23:631 & 632,[11] and PHI did not discharge the Individual Pilots nor did the Individual

Pilots resign. Rather, PHI argues it permanently replaced the Individual Pilots, as a result of a strike

which gave the Individual Pilots a status that is legally distinct under federal and state law from

discharge and/or resignation. Alternatively, PHI argues if the Court were to determine Sections

23:631 and 632 to apply, PHI is still entitled to summary judgment, because the deductions it made

---

[11] Section 631 states:

> A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

La. Rev. Stat. 23:631 (West 2008).

> Section 632 provides the penalty for violation of Section 631, as follows:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

La. Rev. Stat. §23:632.

from the "Individual Pilots'" paychecks were for the "Individual Pilots'" failure to return to PHI equipment necessary for helicopter flight. Finally, PHI argues even if this Court were not to determine the "Individual Pilots" are not entitled to back wages as a matter of law, PHI is nonetheless, entitled to summary judgment on the issue of penalty wages, because in order to award penalty wages against PHI, this Court would have to determine PHI acted in bad faith in making the deductions. PHI argues it did not act in bad faith, because the deductions it made were authorized by the collective bargaining agreement in place between the parties.

In response, the Unions make the following arguments: (1) the "permanent replacement" of the Individual Pilots was "tantamount to discharge;" (2) PHI had in place a policy that unequivocally states job abandonment leads to discharge; (3) the fact that striking pilots remain employees for purposes of the RLA is not determinative of their status under Sections 23:631 and 632, because an employee's status under one statute is not determinative of his or her status under a separate and distinct statute; and (4) PHI made the wage deductions improperly and in bad faith.

### 3. Legal Analysis

Under the RLA, a striking employee remains an employee of the company. 29 U.S.C. §152(3) ("[t]the term 'employee' shall include any employee . . . *and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment. . .*") (emphasis added). *See also National Labor Relations Bd. v. Mackay Radio*, 304 U.S. 333, 335 (1838) ("The strikers remained employees under 2(3) of the [National Labor Relations] Act."); *National Labor Relations Bd. v. Fleetwood Trailer Co.*, 389 U.S. 375 , 381 (1967) (under the NLRA "the status of the striker as an employee continued *until he has obtained*

-13-

*'other regular and substantially equivalent employment'")* (emphasis added); *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 433 (1989) (applying *Mackay Radio* rules to returning strikers' claims under the RLA); *Lodge No. 12, Dist. No. 37, Int'l Assn of Machinists v. Cameron Iron Works, Inc.*, 257 F.2d 467, 471 (5 [th] Cir.) ("nor can we agree that the striking employees were not in the employ of the Company") (citing *Mackay Radio*), *cert. denied*, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110, *reh'g denied*, 370 U.S. 920, 82 S.Ct. 1552, 8 L.Ed.2d 500 (1958). Thus, based on federal jurisprudence, while an employee is striking, he remains an employee of the company. However, if the employee is either discharged for cause – in this case, for example, because he or she engaged in competitive employment during the strike – or obtained "other regular and substantially equivalent employment," the employee's relationship with the company can be permanently severed and the employee would no longer be an employee of the company.

The Unions do not argue the Individual Pilots – as strikers – do not remain employees of the company under the RLA. Rather, the Unions argue the fact the strikers are employees under the RLA is not determinative of the strikers' status under Sections 23:631 and 632. In support of this argument, the Unions cite to the United States Supreme Court's ruling in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), wherein the Court held plaintiff's pursuit, and receipt, of social security insurance benefits did not automatically estop her from pursuing an ADA claim. Furthermore, the Unions argue, under *Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc.*, 707 So.2d 1233 (La. 1998), Individual Pilots who might have "abandoned" their job responsibilities should be considered "discharged" under PHI's own personnel policy, and therefore, those pilots should be entitled to back wages under the Louisiana statute.

The Unions' arguments are without merit. First, this Court notes La. Rev. Stat. §§ 23: 631 and 632 specifically address two categories of employees: those employees who have been discharged and those who have resigned. Although it is unclear to this Court whether the RLA, 29 U.S.C. §152(3), predates the Louisiana statue at issue, at no point has the Louisiana legislature revised Sections 23: 631 and/or 632 to include within its protection employees who have gone on strike and/or employees who have been permanently replaced due to a labor dispute. This Court will not read into a Louisiana statute, a category of *employees* not expressly addressed or included by the legislature, when the Louisiana statute at issue does not otherwise embrace those employees. The Unions have not cited this Court to any cases holding striking *employees* under the RLA are to be treated as *discharged* employees for purposes of collecting back wages under La. Rev. Stat. §§ 23:631 and/or 632. The federal statutory jurisprudence is clear; striking employees are to be considered as employees of the company. The Louisiana statute is clear as to this issue, the statute applies, **"Upon the discharge ..."** and **"Upon the resignation ... ."** The strikers, merely by way of participating in the strike, are not stripped of their status as employees of the company, as is also illustrated by the rights claimed upon return to work post strike. As employees of the company, the strikers have been neither discharged nor have they resigned. Thus, on its face, the Louisiana statute does not apply to those who neither were discharged nor resigned.

Furthermore, after being presented with additional evidence, this Court concludes the *Beard* case is distinguishable from the facts of the instant case. This Court discussed the *Beard* decision at length when it ruled on PHI's previously-filed "Motion to Dismiss Count II of the Unions' Second Amended Counterclaim in the 'Bad Faith Bargaining Case'" [Doc. 86]. In *Beard*, plaintiff worked

for a company that had a personnel policy that stated when an employee walked off the job without cause or voluntarily resigned without notice, the employee was deemed to have abandoned his or her position. The policy further stated any employee who abandoned his or her position forfeited all accrued benefits. Beard walked off her job at the beginning of a shift and never returned to work with no labor strike involved. When Beard requested her accrued vacation pay, the company refused, claiming Beard had abandoned her position and forfeited her right to vacation pay under the company's policy. Beard sued for unpaid wages under La. Rev. Stat. §§ 23:631, 632, and 634.[12] 707 So. 2d at 1233-34.

In holding the company's policy of requiring employees to forfeit wages and its failure to pay Beard her wages violated La. Rev. Stat. §§ 23:631, 632, and 634, the *Beard* court noted the decision of the dissenting judge, who distinguished between an employee who "resigns" and one who "abandons her position" and who argued Sections 632 and 634 are only applicable to an employee who *resigns*. However, the majority stated *"this view is contrary to the personnel policy itself which states that 'abandonment of position is considered a voluntary resignation without notice.'" Id.* at 1236, n.1 (emphasis added). *See also Wyatt v. Avoyelles Parish School Bd.*, 831 So. 2d 906 (La. 2002) (holding School Board violated Section 23:631 where it failed to pay amounts actually accrued and not lost by retired employees pursuant to School Board's "use it or lose it" accrued benefits policy).

In this Court's ruling on PHI's previous motion, this Court concluded *Beard* stands for two propositions: (1) depending upon the company's personnel policies, under certain circumstances, an employer cannot maintain a policy that requires an employee who abandons his or her job to forfeit

---

[12] Section 634 addresses employment contracts to forfeit wages and is inapplicable in the instant case.

wages; and (2) an employee who "abandons" or "voluntarily leaves" a job without notice depending

upon the company's personnel policies, *may* be considered as having voluntarily resigned and thus

may be entitled to relief for a violation of Section 23:631. This Court stated that, pursuant to *Beard*,

*if an employer's policy so provides*, an employee who is not *actually discharged* or who has not

*actually resigned* may be considered as having voluntarily resigned, and, thus may be entitled to

possible relief under Section 23:631. *Stating neither party had sufficiently addressed PHI's*

*personnel policies at the pertinent time regarding payment of accrued benefits to pilots who have*

*been terminated and/or discharged and/or who have "abandoned" their position, this Court stated*

*it could not find Section 23:631 does not apply to this case **as a matter of law**.*

In response to PHI's instant motion, the Unions allege PHI in fact had in place, on September

20, 2006, a policy that stated the following:

> Due to the strike/job actions in place at this time, we are obliged to advise all PHI
> pilots that, consistent with company policy, the following actions **may**
> apply....*Pilots(s) not in contact with their supervisor and/or who do not provide an*
> *acceptable (non-strike related) reason for their absence, will, after three days, be*
> *considered to have abandoned their job responsibilities. The pilot will be*
> *discharged.*[13] (emphasis added)

The Unions contend this policy is sufficiently similar to the job abandonment policy in *Beard*

and to the actions of the employer and employees in *Beard* such that the Individual Pilots should be

entitled to accrued wages. This Court disagrees. PHI's policy states "[p]ilots(s) not in contact with

their supervisor and/or *who do not provide an acceptable **(non-strike related)** reason for their*

*absence*, will, after three days, be considered to have abandoned their job responsibilities. The pilot

will be discharged." Here, the pilots who did not provide a reason for their absence were not at work

---

[13] See Bohelski Decl. I, ¶¶7-9 & Exhibit 2 (emphasis added); Rovinelli Depo. II, p. 33, and Exhibit 8,
attached to the Unions' response.

because *they were on strike.* Notwithstanding PHI's declaration to the contrary, the applicable federal statute and jurisprudence expressly declare those employees engaging in their legal right to strike are, pursuant to law, deemed to be and remain employees of the company. Indeed, the statute states the term "employee" for purposes of the RLA includes *"any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment..."* Thus, PHI's declaration to the contrary – perhaps, quite enlightening as to PHI's good or bad faith displayed in its dealings with the Union – cannot have impact in direct contradiction to applicable law. Furthermore, notwithstanding the argued declaration, PHI, in fact returned to work, as employees, the majority of those pilots who chose to participate in the strike. Thus, to argue the threat of PHI's declaration should wholly discount the reality of PHI's actions is without persuasion. However, the argued declaration is not without relevance as evidence as to PHI and the Unions' actions, intent and good or bad faith shown.

Further, as noted, both PHI and the Union have engaged in returning strikers *as employees* – notwithstanding the argued PHI declaration. Thus, as those Union members who did not "obtain other regular and substantially equivalent employment" or who were not otherwise lawfully discharged for some other violation of the collective bargaining agreement – here, for example, for engaging in competitive employment during the strike[14] – or who were not discharged for some other

---

[14] This Court notes that in other claims in either this lawsuit or the consolidated lawsuits, the Unions allege PHI improperly discharged certain pilots for engaging in competitive employment during the strike. By virtue of this ruling, this Court makes no substantive finding as to these claims. Rather, this Court merely notes for the purposes of this ruling that there are pilots whose employment with PHI actually may have been severed for lawful purposes – such as engaging in competitive employment during the strike -- should such activity, in fact, be in contravention of the collective bargaining agreement between the parties. The purpose of so finding is to illustrate that there may be circumstances under which certain of the pilots are entitled to back wages pursuant to Louisiana law, although for the reasons stated herein, this Court cannot determine which pilots might be entitled to such relief.

lawful reason, and who now demand their right to return to work *as employees* of the company, cannot, also, claim benefits due only to those who have been discharged or resigned. Most, if not all, of the striking pilots who so desired, were *actually returned to work, as employees with PHI.* Thus, while the Unions point to evidence showing PHI might have threatened or even attempted to "discharge" the striking pilots, perhaps in contravention to applicable law, and argue PHI thus, clearly acted in bad faith by threatening to discharge the pilots, informing the pilots there were shortly to receive their "final" paycheck and arranging their COBRA insurance benefits – all, arguably, in contravention of applicable law – the fact remains most of the striking pilots were treated *as employees* and returned to work with PHI *as employees*.

Considering the foregoing, this Court concludes those pilots who went on strike remained employees of the company and thus, on its face, would not fall under the protection of La. Rev. Stat. §§ 23:631 and 632 as contemplated by those statutory provisions. Notwithstanding the foregoing, however there are, apparently, certain pilots who worked for PHI who went on strike and thereafter did not return to work for PHI, either because they were discharged for engaging in competitive employment during the strike, or because they resigned their position or "obtained other regular and substantially equivalent employment," or for other legally allowable reasons. Consequently, these pilots, in theory, *might* be entitled to relief under the wage statute, *if they in fact were "discharged" or "resigned" and if wages were improperly withheld from their final paychecks*. However, this Court has not been presented with sufficient information to determine if this actually is the case under the scenario at play.[15]

---

[15]Nor has the Court, evan at this late date, been presented sufficient evidence and argument as to whether PHI's "policy" and the action of any of the pilots might fall within the *Beard* rationale.

The foregoing factual issue – whether any pilots actually were discharged or resigned and if so which pilots, whether wages were withheld, and if so from which pilots, and, if they were *properly* withheld – is clearly disputed. PHI contends any amounts withheld were properly withheld because the "Individual Pilots" failed to return PHI flight equipment pursuant to company policy. However, the Unions contend the "Individual Pilots" were never given an opportunity to return their equipment, despite repeated requests from the Union and/or the pilots as to where, when, and how pilots were to return the equipment. The Unions, also, contend PHI deducted different amounts from the "Individual Pilots'" paychecks for the same equipment, and that many of the pilots whose wages were withheld had never received the equipment for which the deduction was issued, or had already returned the equipment. Neither party has deigned to identify, with particularity, which pilots might be involved, which of those pilots might have had deductions made and, of those, which had received the equipment, which had returned the equipment or which had attempted to return the equipment.

With the foregoing in mind, this Court cannot determine which generic "Individual Pilots" might be entitled to relief under the statute and which might not be entitled to relief. This Court does note the Unions' Fourth Amended Counterclaim includes a list of pilots who assert a wage claim and contains an attachment, a table of names purportedly showing amounts withheld from certain paychecks, however no further explanation is given. Furthermore, neither party within the context of *this motion* has provided the necessary factual basis to prevail in carrying their burden on this issue. Neither has specifically identified, by name, which pilots were ultimately returned to work and which pilots were actually severed from employment with PHI – and, of the pilots who were

actually severed, why they were severed, and which of those pilots had wages withheld – and why, and of those, which returned the equipment and which attempted to return the equipment. The burden in this context is on PHI, as the moving party, to show it is entitled to the relief requested. This Court concludes PHI has failed to carry its burden of showing it is entitled to summary judgment on the wage issue with respect to any specific pilot, however notes the Union failed in its burden as well to meet what evidence and argument PHI did present. Painting with a generic, broad brush, and engaging in acrimonious surface rhetoric does little more than create a sound and fury signifying nothing and forces an unnecessary drain upon this Court's resources.

### 4. Penalty Wages

This Court notes it has not concluded that no pilot could be due relief under La. Rev. Stat. § 23:632, nor has this Court concluded any pilot is due relief under La. Rev. Stat. § 23:632, et seq., rather this Court specifically finds neither party has carried its burden on this issue. La. Rev. Stat. §23:632 sets out the consequences for violation of the wage statute, as follows:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

La. Rev. Stat. §23:632 (West 2008).

The statute provides two separate consequences for violations of the wage statute: (1) penalty wages and (2) attorneys' fees. PHI contends, pursuant to the statute, an award of attorneys' fees is required if the employee's suit is well-founded, that is, if the claim for unpaid wages is successful.

With respect to penalty wages under the statute, Louisiana courts have held because of the punitive nature of penalty wages, an employer's good faith is an equitable defense. As the court observed in *Harrison v. First Nat. Funeral Homes, Inc.*, 244 So.2d 102, 105 (La.App. 3rd Cir. 1971):

> The established rule is that the provisions of LSA-R.S. 23:632, being coercive or penal in nature, must be strictly construed, and that courts will refuse to allow penalties if the employer had some equitable justification for not paying the wages timely.

(internal citations omitted).

PHI does not argue the Unions are not entitled to attorneys' fees. Rather, PHI argues the Unions are not entitled to penalty wages, *because it withheld the deducted amounts in good faith.* The Unions, predictably, dispute this, for all the reasons stated in this ruling. Thus, the Unions argue PHI's withholding of the wages was not done in good faith. Thus, even if this Court could determine which "Individual Pilots" might be entitled to relief under Louisiana's wage statute, which it cannot for the reasons stated herein, there remain genuine issues of material fact regarding whether the amounts withheld from the paychecks and the reasons for and manner of withholding was done in good faith or the reasons given are merely pretextual.

For the foregoing reasons, PHI's Motion for Summary Judgment on Count II of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case [Doc. 217] is DENIED in its entirety, as PHI fails to carry its burden of showing it is entitled to summary judgment on the wage issue with respect to any specific pilot. Furthermore, it is ORDERED that PHI's alternative request for partial summary judgment on the Unions' claims for penalty wages also, is DENIED, as there remain genuine issues of material fact regarding whether the amounts withheld from the paycheck of any pilot were withheld in good faith.

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that PHI's Motion for Summary Judgment on Count I of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case [Doc. 220] is DENIED, as there are genuine issues of material fact that preclude the entry of summary judgment on this claim.

IT IS FURTHER ORDERED that PHI's Motion for Summary Judgment on Count II of the Unions' Fourth Amended Counterclaim in the "Bad Faith Bargaining" Case [Doc. 217] is DENIED in its entirety, as PHI fails to carry its burden of showing it is entitled to summary judgment on the wage issue with respect to any specific pilot. Furthermore, it is ORDERED that PHI's alternative request for partial summary judgment on the Unions' claims for penalty wages is DENIED, because even if this Court could determine which Individual Pilots might be entitled to relief under Louisiana's wage statute, there remain genuine issues of material fact regarding whether the amounts withheld from the paycheck of any pilot were withheld in good faith.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___17___ day of September, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE